IN THE MATTER OF THE CLAIM OF FRANK
TAUER,
*Employee-Respondent,*

vs.

W. J. WILLIAMS,
*Employer-Respondent,*

MOFFATT-MYERS DEVELOPMENT CO.,
*Employer-Appellant.*

(No. 2537; April 1st, 1952; 242 Pac. (2d) 518)

For the appellant the cause was submitted upon the brief of Dale F. Galles of Billings, Montana, and Anderson and Morgan of Gillette, Wyoming.

For the defendant and respondent the cause was submitted upon the brief of Raymond, Guthrie and Raymond of Newcastle, Wyoming.

## OPINION

RINER, Justice.

This case arose under the Workmen's Compensation Act of the State of Wyoming and to state the matter

briefly its disposition rests upon the answer to the question—who was the employer of the injured workman at the time he suffered the injury subsequently herein described? The workman himself is not involved in this controversy as will presently be seen.

The injury suffered by the workman as reported by the attending physician upon the statement of the workman as to how the injury was sustained was "the workman's right hand was caught in the cat head on the drilling machine and twisted off, resulting in the loss of the right hand and one-third of the fore-arm."

This injury is also described in the judgment and award made by the district court of Weston County which is more fully set forth hereinafter.

As regards the specific question to be decided on this appeal we find the district court of Weston County ruled that the Moffatt-Myers Development Company was the employer or master of Frank Tauer, the workman, at the time the accident occurred and that W. J. Williams, who had hired Tauer for supervising and attending to the drilling operations which the Development Company wanted done and contracted for in its contract with Williams as shown by the instrument hereinafter quoted, was not the employer of Tauer at the time of the accident. In consequence of that final ruling of said court all present and future awards in this matter were made chargeable to the account of the Moffatt-Myers Development Company, the appellant herein, in the Industrial Accident Fund held and administered by the State Treasurer of the State of Wyoming and not to the account of W. J. Williams, respondent herein.

For convenience and brevity the appellant will usually be designated as the "Development Company" and the respondent by his surname.

The contentions of the parties which appear in the record before us are substantially shown by a brief

resume of the answers of Williams and the Development Company as follows:

The answer of Williams, filed March 22nd, 1951, after admitting that Tauer, the workman, was injured on January 6th, 1951, while engaged in the performance of extra-hazardous duties in Weston County denied that he (Williams) was liable therefor, and stated that it was improper to charge his (Williams') account with the Workmen's Compensation Department for any awards which should be determined to be due the workman as a result of the injuries aforesaid, alleging in substance that Tauer was not an employee of Williams on January 6th, 1951, the date of the accident, but as a matter of fact was the employee of the Development Company; that the employment of said Tauer by Williams had at that time ceased. That said Williams had a contract with the said Development Company which had been fully performed and completed prior to that time; that at the time of the accident, Tauer was acting under and by the direction of one Moffatt, the manager of said Development Company, and while in their employment; that the work performed by Tauer was neither the duty nor the concern of Williams but was performed solely for the benefit of said Development Company and was done without the knowledge of said Williams.

The prayer of this answer is that the court awarded to Tauer the proper amounts due him under the Workmen's Compensation Laws of the State of Wyoming, and that they be charged to the Development Company's account; and that the court find that Tauer was, at the time of the accident, an employee of the Development Company and not an employee of said Williams.

The answer of the Development Company, a Montana Corporation, filed June 13, 1951, just a short time before the final trial of this matter, commenced in the district court, states in substance that Tauer was not an em-

ployee of that Company on January 6th, 1951; that the Development Company had entered into a written contract, copy of which was attached to said answer by reference and made a part thereof; this contract being with one W. J. Williams of Campbell County, Wyoming, whereby the Development Company furnished to Williams the necessary drilling tools and equipment to drill an exploratory oil well; that pursuant to this contract Williams was obligated to furnish all labor necessary for the prosecution of the work and to provide proper and adequate insurance to his employees under the laws of the State of Wyoming against injury. That pursuant to said contract Williams employed Frank Tauer as the sole employee used in drilling said well and on which well Tauer was working at the time of the accident; that in fact Williams was Tauer's employer and Williams had the right to hire and fire Tauer—and that this situation existed at the time of Tauer's injury; that the Development Company has paid Williams in full for the drilling of said well and that all wages paid or due and payable for labor was paid and is payable by the said Williams under the terms of the aforementioned contract; that at the time of the aforementioned accident Fred Moffatt, President of the Development Company, was at the scene of the drilling operations for the reason that said exploratory oil well had reached the desired depth and that he, at the moment of the accident, was in the process of helping the said Tauer in order to facilitate the work merely as a gesture of help. That Moffatt at no time gave any orders or in any manner indicated that he was hiring Tauer as a Development Company employee.

This answer prayed that the court find that Tauer was an employee of Williams and not of the Development Company; that all recovery pursuant to the Workmen's Compensation Act of Wyoming should be paid by Williams as employer and that the Development Com-

pany be completely absolved of all liability in connection with the said accident.

The written contract mentioned in the Development Company's answer reads thus:

"THIS AGREEMENT—Made and entered into this 27 day of November 1950, by Moffatt-Myers-Development-Company, of Billings, Montana. Called FIRST PARTY and W. J. Williams Box 67 Gillette, Wyo. of Gillette, Wyoming, called SECOND PARTIES.

## WITNESSETH:

"That for and in the terms and conditions herein contained First Party agrees to pay Second Party ONE-DOLLAR ($1.00) per linear foot for a test well to be commenced on the hereinafter described premises within 10 days from the excution (execution) of this agreement, provided that such depth does not exceed 600 foot or at lesser depth if oil or gas in paying quantities is found, and provided further that the drilling of such test well is preformed (performed) in a workman-like manner and with dillgence (diligence).

"Second-Party agrees to commence a test well on the hereinafter described promises (premises) within 10 days from the excution (execution) of this agreement and to dilligently (diligently) drill such test well in a workmanlike manner to a depth of not to exceed 600 foot unless oil and gas in paying quantities is found at a lesser depth, and set casing, run rods&tubbing, for the compensation hereinabove provided.

"FIRST PARTY—agrees to furnish the drilling-rig, tools gas & oil, water truck, piping &casing and to have same available for installation by second partys when ready. To pay One-Hundred (Hundred) Dollars ($100.00) every 100 foot for the first 300 foot, balance when well completed.

"SECOND PARTIES agrees to do and preform (perform) the following:

1. Maintain abequate (adequate) records and a drilling log.

2. Carry full and abequate (adequate) Public Lia bility, Employer's Liability and Workman's Compansation (Compensation) Insurance.

3. Permit first-party or it's agents to logs, records and samples.

"SECOND-PARTIES—agrees to drill such test-well at a location designated by First Party being SE¼ NE¼ of Sec. 30 48N—63W. Weston County, Wyoming.

"IN WITNESS whereof.............Moffatt-Myers-Development-Co.

(signed)  by Fred Moffatt, President
(signed)  Mr. W. J. Williams,
                Box 67, Gillette, Wyo.

Attest: Dale F. Galles

(Corporate Seal) Secretary

                Mr.
                        Driller

                Mr.
                        Driller

This matter was first heard on March 22nd, 1951, and a judgment entered on March 27th, 1951; however, upon a motion filed by the Development Company for a new trial the district court sustained same and ordered that a re-hearing of the cause be granted, the matter to be heard again on June 13, 1951. On that day all parties appeared by their respective counsel and the answer of the Development Company as above recited was filed. The cause was thereupon tried by the court without a jury.

The judgment ultimately rendered on July 6th, 1951 and the findings upon which it was based were as follows omitting preliminary recitals:

"FINDS, that upon the 6th day of January, 1951, and at the time of the accident herein that the injured work-

man, Frank Tauer, was not an employee of W. J. Williams and that he was not the employer. That upon said date and at the time and place of the accident the said Frank Tauer was an employee of Moffatt-Myers Development Company, a corporation, and that it was his employer.

"That the account of said W. J. Williams was wrongfully charged with the payments made in said matter being the doctor's bill, hospital bill and one month of Total Temporary Disability payment and that these items should have been charged to the Workmen's Compensation Account of Moffatt-Myers Development Company, a corporation, and that these items should not be charged to said W. J. Williams nor should any subsequent awards herein made or made since the date of the original judgment herein, viz. March 23, 1951, be charged to said W. J. Williams and all subsequent charges and awards herein should be charged to said Moffatt-Myers Development Company and to its account.

"That said Frank Tauer should have and receive Total Temporary Disability until he is discharged by his physicians; that he has suffered the loss of an arm between the elbow and wrist on the right arm and should have and receive therefor the proper statutory amount for such injury and that there should be paid herein all further doctor, hospital, medical or other claims which may be allowed by this Court.

"Now therefore it is

"ORDERED, ADJUDGED AND DECREED, that all awards or payments heretofore made herein or which may be hereafter made and approved by the Court be charged to the Workmen's Compensation Account of Moffatt-Myers Development Company, a corporation. That the payments heretofore made herein and charged to the account of W. J. Williams be transferred to the account of Moffatt-Myers Development Company and charged thereto.

"That the injured workman, Frank Tauer, have and receive Temporary Total Disability in the sum allowed by law until he is discharged by his physicians.

"That he be awarded the sum of Three Thousand Fifty Dollars ($3050.00) as provided by law for the loss of his

right arm between the wrist and elbow and that all further claims allowed herein be paid.

"That after his discharge by his physicians, he be made the proper statutory award to secure an artificial hand.

"To all of which the Moffatt-Myers Development Company did except, which exception is by the Court allowed.

"Done in open Court this 6th day of July 1951."

Before any evidence was presented on the trial of the case the following oral stipulations were dictated by counsel into the record and approved by the court, viz: "It is stipulated and agreed by and between the parties hereto that Frank Tauer, the injured workman in this case, was injured in Weston County, Wyoming, at about the hour of 1:00 o'clock P.M. on January 6, 1951; that while he was injured he was at that time engaged in the pulling of casing from an oil well, and that such work is extrahazardous employment as defined by the Statutes of the State of Wyoming; that the injury of the injured workman made it necessary to amputate his right arm at a point below the elbow and that the injured workman is entitled to have and receive such compensation and allowances as allowed by the Statutes. * * *

"It is further stipulated and agreed that in this matter the only question raised between the parties or raised by the pleadings is as to which party W. J. Williams or Moffatt-Myers Development Company, is the employer of the injured workman, or was the employer of the injured workman at the time of the accident, and which of their respective funds in the Workmen's Compensation Department should be liable therefor."

Counsel for Williams stated to the court at that time that as the answer of the Development Company had been placed in their hands only a short time before the case was called for trial and that they had had no opportunity to reply thereto that the record should show that they—

"make a general denial in response to this answer we have just received in the last few minutes."

There was no objection by opposing counsel that this

be done and it received the approval of the court.

Where assignments of error appear as they do here that the judgment above set forth was not sustained by sufficient evidence and was contrary to law, as pointed out by counsel for respondent in their brief, it has been repeatedly decided by this court that we:

"must assume that the evidence in favor of the successful party is true, leave out of consideration entirely the evidence of the unsuccessful party in conflict therewith, and give to the evidence of the successful party every favorable inference which may be reasonably and fairly drawn from it." Dulaney v. Jensen 63 Wyo. 313, 320, 181 Pac. (2nd) 605; and cases there cited.

Following this rule it may be noted that the facts upon which the disposition of this controversy must turn are quite clear: It appears that in the case at bar Williams contracted to drill the hole in search of oil to be paid for at the rate of $1.00 per foot in depth; that the Development Company furnished all the tools and the drilling rig with which to do this work, and that that Company furnished practically everything which was required to put the hole down; that Moffatt for the Development Company paid Williams, in full for all the drilling contracted for under the contract above set forth, the sum of $475.00 which was at the rate of the above mentioned $1.00 per foot, the final measurement being made on the hole by Tauer shortly before the accident happened in which Tauer was injured.

Moffatt testified in part that the contract aforesaid was the sole and only contract between the Development Company and Williams. That this instrument sets out fairly and fully the understanding between Williams and the Development Company; that neither Williams nor Tauer, nor anyone else in Williams' employ attempted to pull any casing from the hole which had been drilled, after Tauer was hurt; that Moffatt never requested Williams to pull the casing; that Moffatt di-

rected Tauer to stop drilling and pull the casing and aided the latter in that work; that he (Moffatt) prepared the written contract for signature by both parties; that after it was written both Moffatt and Williams read it over and then Williams signed it and Moffatt, on behalf of the Development Company signed it.

Tauer, the workman, testified among other things, that when he (Tauer) got to the bottom of the hole by drilling Moffatt said to him: "I guess we are not going to get anything. We will pull the casing tomorrow." Williams did not send anyone else out to the location of the drilling rig to do this work. That Moffatt and Tauer started pulling the casing from the hole about 10:00 a.m. or a little afterwards; that Williams paid Tauer for his work, but that this payment did not include the day Tauer was hurt, i.e. on January 6th, 1951, when he and Moffatt were pulling the casing from the hole; that Tauer was paid by the day and Williams paid Tauer all he owed the latter—but no one paid Tauer for the work the latter did on January 6th; that Williams told Tauer that the Development Company would stop him; that the drilling work was stopped by Moffatt on the night of the 5th January, 1951. That Tauer stopped drilling because Moffatt told him to do that; that on the next day Tauer waited for Moffatt to come out to the rig before he started the work; that the work of pulling the casing was commenced after Moffatt came to the rig that morning and this was later in point of time than he (Tauer) usually started doing the drilling work; that he and Moffatt laid the casing on the ground and that Moffatt directed Tauer where to pile this casing on the ground; that Tauer would not have pulled the casing without Moffatt's direction; that if Moffatt had not ordered the casing to be pulled, Tauer would not have pulled it, but would have gone home. That the reason that Tauer was there to pull the casing was because of

the order made the day before by Moffatt to the effect that the casing would be pulled "tomorrow" by them.

Williams testifying as a witness in his own behalf stated that no other agreement of any character or kind was entered into between Williams and the Development Company other than the written contract quoted above; that the Development Company furnished the rig and "everything but the labor for the drilling of the hole." That Williams did not tell Tauer the nature of the agreement with the Development Company but did tell him that the Development Company had a contract with Williams to go to 600 feet unless the Development Company stopped the drilling prior to that depth.

That it had been about a week prior to the accident since Williams was out at the rig location; that when Williams and Moffatt went out to the rig after the accident and in the night time, there was some casing on the ground and some hanging up there or sticking out of the hole; that Moffatt did not say anything to Williams about pulling the remaining casing from the hole; that when Moffatt and Williams settled up for the drilling work Moffatt said nothing whatever to Williams about "any obligation to remove that casing." That Moffatt did not suggest directly or indirectly that Williams "Come down there or send somebody there to get that casing out." That Moffatt did not call or say anything to Williams on January 5th, 1951, about stopping drilling and pulling the casing out the next morning; that on January 6th, 1951, neither in person nor by phone call was anything said between the parties about pulling that casing; that Tauer never submitted to Williams a bill for wages due for his work performed on January 6th, 1951; that the written contract hereinabove set forth was the only agreement Williams had with the Development Company.

On cross-examination Williams also stated that Moffatt, on behalf of the Development Company, moved the

rig in and set it up; that Tauer and Moffatt made the log of the hole; that Williams does not know how many times he visited the location of the hole; *that Williams told Tauer that Moffatt had the right to stop the drilling at any time.* (Italics supplied).

That Williams was willing to accept $1.00 per foot for the drilling and Moffatt paid him the sum of $475.00 in full for the drilling work performed.

Upon questions propounded by the court, Williams told the Judge that he paid Tauer $10.00 per day whether he worked six hours or ten hours a day, this being a matter that was optional with Tauer.

The principal contention urged by appellant is, as we understand its position, that it should have been permitted to show that there was a local custom or usage where this hole was being drilled that drilling a hole to obtain oil included also the duty of removing the casing from it when the hole was abandoned. There are several conclusive answers to this contention. We may observe that nowhere in the Development Company's pleading is anything said about a special usage or custom that the word "drill" or "drilling" includes also the duty of extracting casing from the hole which is "drilled."

In 55 Am. Jur. 309, § 47 the text states: "It is a general rule, adhered to by the great majority of courts with few exceptions, that those customs, usages, or practices which are made use of in the various lines of trade and business must be pleaded where they are made the basis of recovery or defense, since they are of a particular rather than a general nature, and therefore are not matters of which the courts could take judicial notice. As has been said, in the case of a special local custom applicable to a particular business, 'the interests of general justice demand that it would be properly pleaded and the opposing party notified of what he has to meet.' "

The primary meaning of the verb "drill" is given in Webster's New International Dictionary (2nd Ed.) as

"to pierce or bore with a drill." It is reasonably clear from the contract signed by the parties and set forth above that this meaning was what was intended by the contracting parties to the instrument aforesaid. There is testimony, as we have seen, that there was no agreement of any kind or character other than as set forth therein and there is nothing said in the writing which indicates any meaning for the word "drill" other than its primary significance as defined by Webster. No authorities are called to our attention that give the word "drill" the meaning sought to be attached to it by the Development Company. Indeed the parties themselves make it obvious that after the accident Williams was not expected to remove the casing as an obligation to be fulfilled under the contract. Williams did not offer to remove the casing and Moffatt, for the Development Company, never requested him to do so. The parties themselves obviously have construed the contract contrary to the view now urged by the Development Company.

A number of questions were asked by counsel for the appellant of his witnesses seeking to show what acts were included in the word "drilling" or "drill." Upon objection by opposing counsel the testimony was excluded. After the rulings excluding them were made there were no offers of proof presented to the court disclosing just what was sought to be elicited. In Casper Motor Co. vs. Marquis, 31 Wyo. 115, 119, 223 Pac. 764, quoting from Elliott on Appellate Procedure, § 743, it was said:

" 'In the examination in chief the exclusion of testimony is not available as error unless the party makes an offer to prove the facts which he assumes that his questions will elicit. Where an objection is properly interposed more must be done, in cases where the objection is sustained, than to ask the question; the party producing the witness and insisting upon the question must state what he proposes to prove by the witness.' "

To the same effect is our later case of Wyoming Inv. Co., v. Wax et ux, 45 Wyo. 321, 18 Pac. (2d) 919.

3 Am. Jur. says at page 97, § 354 that:

"The general rule is that an exception to the exclusion of evidence must be predicated upon an actual offer of proof, which offer is made, ordinarily, by propounding to a witness a pertinent question and, upon objection thereto, stating to the court what the testimony of the witness would be if he were permitted to answer."

See also 53 Am. Jur. 90 § 101; 64 C.J. 123, § 140.

Again the evidence herein establishes without contradiction that the contract between the parties therein was as a matter of fact drawn by Mr. Moffatt himself as president of the Development Company. In such case if there should be thought there was doubt as to the true meaning of the word "drill" or "drilling" in the instrument herein involved let it be recalled that 17 C.J.S. 751 § 324 says that:

"To the extent that a contract is susceptible of two constructions by reason of doubt or uncertainty as to the meaning of ambiguous language, it is to be construed most strongly or strictly against the party by whom, or in whose behalf, the contract was prepared or the ambiguous language was used, and liberally and most strongly in favor of the party who is not the author, and not responsible for the use, of the language giving rise to the doubt or uncertainty."

It is insisted that the court erred to the prejudice of the Development Company in not requiring the witness then on the stand to answer certain questions and under the circumstances as shown by the following passage taken verbatim from the record:

"Q. In other words you could not fulfill your end of the contract without the use of the casing?
"A. Yes I could.
"Q. How?
"A. Go ahead and drill it without the casing. We could have drilled a hole there without the casing.

"Q. Did you ever drill any on this hole?

"A. Just a little bit.

"Q. How many feet did you drill on this hole?

"A. I don't know.

"Q. You made a log of the hole?

"A. No. Frank made it.

"Q. That is the log that was furnished to Mr. Moffatt.

"A. Between Frank and Mr. Moffatt they made the log.

"Q. You are not familiar with the log on the hole?

"A. Yes, I am familiar because I was there at various times. (Referring to the location of the drilling operations.)

"Q. How many times were you there, Mr. Williams?

"A. I don't know how many times. At one time I was there—

MR. MORGAN: Will you answer my question please?

THE COURT: Just a minute. He was giving you an answer. Will you read the last question, please.

(WHEREUPON THE LAST QUESTION WAS READ BY THE COURT REPORTER.)

THE COURT: You may go ahead and answer that.

THE WITNESS: A. I don't know the exact number of times I was there.

MR. MORGAN: Q. Would you approximate the number of times, please.

"A. No. I don't know.

"Q. You can't give any approximation as to how many times you visited this location?

"A. Not with any degree of accuracy.

"Q. I am only asking you for an estimate.

THE COURT: He says he can't tell you, so what is the use of asking him any more?

MR. MORGAN: I don't know, your Honor.

THE COURT: He says he can't tell you, so forget it. (Exception allowed.)

So far as we are able to perceive the court did all that could be expected in requiring the witness to answer. The witness said he did not know the answer to the question. Even counsel for the Development Company stated to the court that he did not know what would be

gained by repeated inquiries of that character. There was no error in this ruling.

The decisive question to be resolved here, is of course, whether Tauer, at the time of the accident, was working for the Development Company or for Williams.

In Fox Park Timber Co. v. Baker 53 Wyo. 467, 84 Pac. (2d) 736 which was also a case arising under the Workmen's Compensation Law of this State it was there pointed out that an outstanding test whether a person is a servant of an employer or not depends on whether the employer "has or has not retained the right of control over the party whose status is in question. If he has retained such right the party is generally regarded as a servant" and the case of Stockwell v. Morris et al 46 Wyo. 1, 15, 16; 22 Pac. (2d) 189, 28 R.C.L. 762; 71 C.J. 455, and other authorities are cited. In the Stockwell v. Morris case it may be appropriate to note that this was said:

"If, accordingly, the right of control is the test in connection with the question before us, and the courts apparently agree that it is, then, it would seem, it ought to be directed to that portion of the employment directly connected with the factor by reason of which liability is sought to be established."

Recurring to the Fox Park Timber Co. case supra it is pertinent to note also that it was further observed: (page 489):

"As phases of control or right of control may be mentioned the factors: the place where the work is to be performed, the scope of the work and the control of the premises where the work is required to be done. 71 C.J. 458."

Scanning the record before us it appears quite plainly that the understanding of both Moffatt and Williams was that the Development Company could stop the drilling work at any time after it had been begun. Indeed the parties actually acted on that understanding. When the drilling work reached a point where, in the judg-

ment of the president of the Development Company, nothing would be gained by continuing the work further, Moffatt ordered Tauer to stop drilling and this Tauer did. Williams acquiesced in this action of Moffatt as he accepted the payment made by Moffatt in full settlement under the contract for the 475 foot dry hole drilled at the rate of $1.00 per foot in depth; nothing appears to have been said between the parties, i.e. The Development Company and Williams about removing the casing from the well. Moffatt later representing the Development Company took over that job and Tauer and Williams both recognized his right so to do. It is significant we think, that Tauer took his orders from Moffatt in the course of the work of removing the casing inasmuch as Tauer placed the casing as extracted from the hole where Moffatt directed him to place it. In other words the Development Company, which had already prescribed the place where the work was to be performed, took over the control of the premises where the work was required to be done and both Tauer and Williams made no objection at all to what Moffatt did on the premises after the drilling was stopped.

As already mentioned the drilling rig, for the performance of the work called for by the contract, was the property of the Development Company as well as all the necessary tools and equipment needed to carry on the work which the contract provided should be furnished by it. The entire record renders it evident too, that the pulling of the casing as a consequence of which and in the course of which Tauer was injured was under the absolute control of the Development Company. Williams had nothing whatsoever to do with it. We are obliged to conclude that considering all the circumstances here involved Tauer was the employee of the Development Company and not that of Williams when the accident occurred.

That being so it logically follows that the judgment of the district court of Weston County was correct and should be affirmed.

*Affirmed.*

BLUME, C. J., and PARKER, District Judge, concur.