Dale VALENTINE, d/b/a Valentine Construction Co., Appellant (Defendant and Third-Party Plaintiff),

v.

ORMSBEE EXPLORATION CORPORATION, a Wyoming corporation, Appellee (Plaintiff),

v.

GEORGE BROWN SUPPLY CO., (Third-Party Defendant).

GEORGE BROWN SUPPLY CO., Appellant (Third-Party Defendant),

v.

Dale VALENTINE, d/b/a Valentine Construction Co., Appellee (Defendant and Third-Party Plaintiff),

v.

ORMSBEE EXPLORATION CORPORATION, a Wyoming corporation, Appellee (Plaintiff).

Nos. 5834, 5835.

Supreme Court of Wyoming.

June 8, 1983.

Rehearing Denied June 29, 1983.

Joe R. Wilmetti and William F. Swanton, Casper, for George Brown Supply Co., appellant in No. 5835.

Houston G. Williams and Richard L. Williams of Williams, Porter, Day & Neville, P.C., Casper, for Dale Valentine, d/b/a Valentine Construction Co., appellant in No. 5834 and appellee in No. 5835.

George M. Apostolos and Claude W. Martin, Casper, for Ormsbee Exploration Corp., appellee in Nos. 5834 and 5835.

Before ROONEY, C.J., RAPER, THOMAS and BROWN, JJ., and GUTHRIE, J., Retired.

GUTHRIE, Justice, Retired.

This case arose when Ormsbee Exploration Corporation, plaintiff below and appellee here, filed a suit seeking recovery for furnishing a drilling rig and for the loss of tools incurred in the drilling of a well for oil in Johnson County, Wyoming. This claim was asserted against Dale Valentine, d/b/a Valentine Construction Co., defendant below and appellant here, who, by way of answer, admitted the agreement, that the work had been done, and that the tools and equipment had been lost, but asserted several affirmative defenses. Dale Valentine further filed a third-party complaint against George Brown Supply Co. making it a third-party defendant and George Brown Supply Co. also appears as an appellant herein based upon the judgment. The third-party complaint rests upon the claim that George Brown Supply Co. had sold a bail to Ormsbee Exploration Corporation and that the bail's failure caused the loss of the string of tools which was unrecoverable, forcing the abandonment of the well. It was claimed that the bail was defective and unmerchantable and that breach of its warranty of fitness was the proximate cause of the mishap. Third-party plaintiff sought recovery of any sums which might be awarded against him in Ormsbee's suit and certain other damages resultant from the mishap.

The court below entered judgment for Ormsbee against Valentine in the sum of $90,439.06, plus interest and costs, and in favor of Valentine upon the third-party complaint against George Brown Supply Co. in the sum of $111,856.59, plus costs. Valentine brings this appeal seeking to set aside the judgment against him and in favor of Ormsbee Exploration Corporation. George Brown Supply Co. seeks reversal of the judgment obtained by Valentine against it on the third-party proceedings.

We will affirm.

The original action and the action on the claim asserted by way of third-party complaint were consolidated for trial but were tried separately as a matter of convenience. For clarity and convenience, we shall follow the same format in making our disposal.

After an earlier telephone conversation between Pat Ormsbee and Dale Valentine which explored the possibilities of the Ormsbee Exploration Corporation supplying a rig, equipment, tools and services to Dale Valentine for the drilling of a well for oil in Johnson County, Wyoming, Pat Ormsbee, as president of said corporation, sent a letter setting out its proposal to Valentine on April 10, 1980. Valentine made an oral acceptance of this proposal sometime prior to July 7, 1980, and in pursuit of this agreement, the rig and equipment were moved upon the location of the well on July 7, 1980, and drilling began there on July 8, 1980. The plaintiff (appellee here) continued the operation until August 7, 1980, when a bail broke causing a string of 1,100 feet of drill pipe, 100 feet of drill collars, a drill bit, three subs and a part of the bail to fall into the hole. Ormsbee spent some time using fishing tools in trying to recover these and remove them from the well. When it was unable to recover the string of pipe or other equipment, further drilling of the well was made impossible.

It was for the use of the rig and the last pipe and equipment that Ormsbee makes its claim and by virtue of which the trial court entered its judgment against Dale Valentine. The issues which appellant raises in his appeal are as follows:

"I. Did the trial court err in holding that the risk of loss as to Plaintiff Ormsbee's equipment lost in the hole, and the consequent loss of the hole entirely prior

to reaching the objective depth, should be borne by Defendant Valentine?

"II. Did the trial court err in awarding Plaintiff Ormsbee damages on the theory of quantum meruit?

"III. Did the trial court err in disregarding the corporate entity of D and V Investments, Inc[.]?"

Although the judgment entered herein contains only a general finding, the statement of the issues is derived from the opinion letter delivered by the trial judge in announcing his disposal of this matter. The applicable portions of that letter, insofar as they are necessary to understand the appellant's position, are as follows:

"As to the contention that the agreement was made by Dale Valentine in behalf of D & V Investments, the Court will disregard the corporate entity D & V Investments. All negotiations were conducted between Ormsbee and Dale Valentine, the D & V Investments is a closely held corporation consisting of Dale L. Valentine and his wife, Verna. The corporation has minimal assets.

\* \* \* \* \*

"The contract between the parties was silent as to who would assume the risk of loss. Mr. Ormsbee testified that the contract was a day work contract, which commonly provides that the operator assumes the risk of loss such as occurred in this case. The contract obviously could not be considered an hourly contract nor a turn-key contract. Mr. Valentine, the operator, or his agent Mr. Ohman maintained supervision over the drilling of the well and authorized the fishing operation and the cessation of the fishing operation. The parties operated under this contract as though it were a day rate contract, and the Court finds that the contractor, Ormsbee, is entitled to recover for the agreed compensation under the written proposal and for the loss of the equipment and material occasioned by the failure of the bail.

"Under the theory of quantum meruit the Plaintiff furnished the labor and material to the defendant; the defendant accepted the services; and the defendant did receive the benefit of the work accomplished up to the time of the abandonment of the fishing operation."

The letter containing the accepted proposal is as follows:

"Regarding your well to be drilled west of Kaycee in Johnson [C]ounty, we would like to make the following proposel [sic]:

"We would provide one 1978 15–W model Gardner-Denver rig powered by a 350 HP Cummings diesel engine. The rig is equiped [sic] with a 5½ × 8 Gardner-Denver mud pump as described in the enclosed brochure. Our rigs have stretched derricks designed to rack two 20′ lengths of pipe, and can stand back 2500′ of 2⅞″ × 20′ pipe. Additionally the rig is equiped [sic] with a WEJ air compressor, 7½″ retracting rotary table, sufficient pipe collers, [sic] 10′ × 2⅛″ Christensen cor barrel with split inner tub as described, fuel, lubricants, and an experienced crew.

"Our rates for this equipment would be $135.00/hr. This would apply to rigging up, rigging down, drilling and setting surface casing, cementing, drilling and reaming, running pipe, completion work, plus any standby at your request. Additionally we would bill you at our cost for all bits, mud, lost circulation material, chemicals, third party services, and rental tools. There would be a $3.00 per mile move in and move out cost, plus per diem expense of $30.00 per day for each man on the 3 man crews. This hourly rate would apply to a drilling unit consisting of a rig, a 3000 gallon water truck, and a 4 × 4 radio equiped [sic] pickup. We would provide a 580 model Case backhoe for digging and cleaning pits at $25.00 per hour when in use only.

"Rocky Mountain Rental Tool has quoted a double gated B.O.P. at a minimum of $500.00 for ten days, plus $50.00 per day for each additional day.

"Thank you very much for the opportunity of discussing this work, we will wait to hear from you." Addressed to Dale Valentine of Valentine Construction Co., and

signed by Pat Ormsbee as president of Ormsbee Exploration Corporation with a date of April 10, 1980.

There was a rather full and complete stipulation of agreed facts between these parties which will be specifically referred to in certain particulars as they become essential in the discussion in this decision.

■ It would appear as well at this juncture to set out briefly the governing rule which binds this court in disposal of matters which involve conflicting testimony. Nothing has suffered such repetition but because of its application to several of the contentions here asserted, it will be set out. The evidence of a successful party is accepted as true and a judgment will not be disturbed unless the finding is totally in conflict with the great weight of the evidence so that it might even be termed irrational. *Agar v. Kysar*, Wyo., 628 P.2d 1350, 1353 (1981).

■ Appellant attacks the judgment insofar as it was based upon the theory that the owner bore the loss because of the custom or usage in the industry and that there was insufficient evidence to sustain any finding that the custom (usage) of the industry would impose that loss upon Valentine as the owner.[1] The paragraph from the decision letter, supra, demonstrates further that the trial court did consider other factors as well as the custom, such as the supervision and control. If the judgment against the appellant is sustainable on any basis, it must be affirmed. *Agar v. Kysar*, supra; *Wightman v. American National Bank of Riverton*, Wyo., 610 P.2d 1001, 1003 (1980), and cited cases.

What does the contract itself obligate the appellee to do? The first paragraph contains only an agreement to provide certain described equipment, fuel, lubricants and an experienced crew, and there is no suggestion that it failed in performance of this obligation. The second paragraph sets out rates for the use of the equipment for "rigging up, rigging down, drilling and setting surface casing, cementing, drilling and reaming, running pipe, completion work,

plus any standby at your request." It further provides for the billing of costs for bits and various tools and materials including third-party services and the charges for moving in and per diem for the crews.

The parties by virtue of an "Agreed Statement of Facts" and a "Stipulation and Further Agreed Statement of Facts" settled upon certain things which are binding as between them.

"11. The terms of the April 10, 1980, written proposal from Pat Ormsbee, President of Ormsbee Exploration Corporation to Dale Valentine of Valentine Construction Co., were accepted orally by Dale Valentine prior to July 7, 1980, without modification of any kind.

"Defendant withdraws his contention that the acceptance and the agreement was [sic] subject to Plaintiff's reaching the total depth specified for the well, as set forth in Paragraph 4 of the Agreed Statement of Facts dated August 23, 1982."

Additionally, the appellant did not contend that the bail broke apart through any fault of Ormsbee. The loss of the tools made it impossible to further drill the well.

Inquiry might then be made as to the manner in which the appellee failed to perform its obligation of furnishing a certain oil rig for a specified sum and performing the agreements set out in the letter. It had no obligation by virtue of the contract to finish or complete any well, it had no obligation thereunder to drill to any particular depth, nor did it have any obligation to leave the rig for Valentine's use for any definite or particular period by virtue of the contract. Ormsbee, having fulfilled all these conditions, might then be suggested to have earned the stated amount of rental for its equipment without further aid of evidence.

If it be conceded for the purpose of this opinion and arguendo that the decision of the court was based solely upon a finding that there is an implied condition or usage in day work contracts in the oil industry

1. The party who owns the lease and contracts    for the drilling.

and if such usage be proven, in that event the usage would be incorporated into the agreement with the terms thereof. This court has held that:

> " * * * A contract includes not only what is stated expressly but also that which of necessity is implied from its language, and parties who contract on subject matter concerning which known usages prevail incorporate into the agreement such implications if nothing is said to the contrary. * * * " *Engle v. First National Bank of Chugwater,* Wyo., 590 P.2d 826, 831 (1979).

*Arch Sellery, Inc. v. Simpson,* Wyo., 360 P.2d 911, 912 (1961). It may be observed at this point for whatever value it so had that this contract under which appellee operated was necessarily supplemented by the custom and practice in the oil field or it would have merely supplied its rig and equipment and crew without any further responsibility which it does not claim.

One who asserts or claims under a usage of the trade, however, has the burden of proof of its existence. *Mountain Fuel Supply Company v. Central Engineering & Equipment Company,* Wyo., 611 P.2d 863, 869 (1980). Appellant attacks the sufficiency of the evidence on custom (usage) upon two grounds, i.e. that the party affected must have been shown to have knowledge of it or that it is so long established and has such general acquiescence to those in the business that it would induce the belief that the parties contracted in reliance upon it.

There is no definite proof in the record that Valentine had knowledge of the usage. However, his testimony is most unsatisfactory in that area. We find no clear-cut denial of such usage by him. Pat Ormsbee, however, testified that by custom and usage in the industry this was a day work contract and in those types of agreements loss would be placed upon the operator.

There is, however, one circumstance which appellant did not consider and that is that both Ormsbee and Valentine were engaged in the same occupation or business. Ormsbee had been engaged in all phases of the oil business since 1957. Valentine was not inexperienced or unacquainted with the oil leasing or drilling of wells, having been born in the oil fields and engaging in the oil business as a contractor for the last 17 years. He had formed D & V Investments to invest in oil and gas drilling deals, and had Taylor Exploration drill four wells for him, one in Nebraska and three in Wyoming—all this indicating more than casual acquaintance with the oil business. If both parties are in the same occupation and experienced therein, there is a presumption that both parties have knowledge of such usages. A short and clear statement of that rule is as follows:

> "Parties engaged in the same occupation are presumed to have knowledge of the usages applicable to it; and it is not necessary in litigation between them to establish actual knowledge of a usage affecting their dealings. * * * " *Pletchas v. Von Poppenheim,* 148 Colo. 127, 365 P.2d 261, 263 (1961).

See further *Graham v. Rockman,* Alaska, 504 P.2d 1351, 1356 (1972), and cases cited therein; *Somerset Pipe Line Co. v. Pioneer Oil & Refining Co.,* Tex., 289 S.W. 155, 157 (1926); *Lambourne v. Manchester Country Properties, Inc.,* 135 Vt. 178, 180, 374 A.2d 122, 123 (1977).

Further, appellant introduced as his exhibit a form covering a day work drilling contract which his counsel refers to as a standard form. This form contains an explicit clause which would have shifted the loss to him and codifies what the appellee herein has testified to be a custom. This exhibit cuts both ways. When appellant's counsel styles it as a standard contract, it does form the basis for an inference at least that this loss provision is customary and usual in the drilling business in day work contracts as has been testified.

Appellant does testify that he would not have signed such a form but does not suggest that he ever communicated this to Ormsbee or to any other person. He suggests that there was some duty upon Ormsbee if it believed such condition should have been included in the agreement to have

included such in its letter. This is, however, not consistent with the authorities.

■ When a usage is common to an industry, the failure to negate an application of such usage engenders an assumption that it was intended to apply and that if the person contracting wishes to escape the force thereof, he should except such custom. *Arch Sellery, Inc. v. Simpson,* supra; *Engle v. First National Bank of Chugwater,* supra. This was quite well expressed in the case of *Hostetter v. Park,* 137 U.S. 30, 40, 11 S.Ct. 1, 4, 34 L.Ed. 568, 572 (1890), when it was said,

> "It is well settled that parties who contract on a subject matter concerning which known usages prevail, incorporate such usages by implication into their agreements, if nothing is said to the contrary. [Citation.]"

See also, *Everett Plywood Corporation v. United States,* 512 F.2d 1082, 1089 (Ct.Cl. 1975), and cases cited therein; *Kurlan v. Tirrell Bros. Silk Corp.,* 102 F.Supp. 970, 971 (S.D. N.Y.1952); *M.R. Mansfield Realty, Inc. v. Sunshine,* 38 Colo.App. 334, 561 P.2d 342, 344 (1976); *Tong v. Borstad,* N.D., 231 N.W.2d 795, 800 (1975); *Oil Insurance Association v. Royal Indemnity Company,* Tex. Civ.App., 519 S.W.2d 148, 151 (1975); 4 Williston on Contracts, Third Edition, § 609, p. 405 (1961).

■ We are satisfied that the trial court did not commit error in receiving the evidence of usage in the oil business and that its resolution and finding upon the conflicting testimony should not be disturbed by this court. Our disposal must be governed by the rule affecting the resolution of matters of conflicting testimony as set out earlier in this opinion.

We shall not consider the propriety of the trial court's finding which would also allow recovery on the basis of quantum meruit. It becomes unnecessary to our decision because disposal has been otherwise made of the matter. There being no contemplated retrial of this case, any expression of opinion would not be justified on the basis of assistance in further proceedings and would be only an exercise in self-indulgent expression.

■ The third issue has little merit and warrants no lengthy discussion. The letter setting out the contract was directed to Dale Valentine, Valentine Construction Co. Pat Ormsbee's testimony is that he had never even heard of the D & V Investments until July 8, 1980, when he was advised by the crew that the drilling reports were to be made to the D & V Investments. He further testified that no such claim had ever been asserted until after the controversy arose. It would appear quite obvious that a contract could not be entered into between Ormsbee and some entity of whose existence it did not even know. This is clearly a matter involving a determination by the trial judge upon conflicting evidence. By virtue of our holding in *Agar v. Kysar,* supra, and numerous other oft-repeated cases, it would be improper to disturb such determination.

The judgment of Ormsbee Exploration Corporation against Dale Valentine, d/b/a Valentine Construction Co. must be affirmed.

We will now consider the appeal directed at the judgment upon the third-party complaint against George Brown Supply Co. as third-party defendant (appellant) and in favor of Dale Valentine, d/b/a Valentine Construction Co., third-party plaintiff (appellee). After the trial of the third-party complaint, the trial court entered a judgment against the third-party defendant and appellant here in the sum of $111,856.59, plus costs. This figure represents the amount of the judgment entered against Valentine and in favor of Ormsbee Exploration Corporation upon the original complaint along with other losses suffered by the third-party plaintiff resulting from the break down of the bail.

■ Any discussion of the material facts involved in this proceeding which are necessary for the understanding of this case and its disposal will be set out in the discussion of the issues raised and as hereafter set out.

In pursuit of its appeal, the appellant herein presents for our review the following:

"a. Did the trial court err in denying third party defendant the right to cross-examine witnesses concerning the original contract between plaintiff and defendant and the location of the well since the amount of recovery, although the issues were being tried individually, effected [sic] the judgment which could be rendered against the defendant?

"b. Did the court err in sustaining defendant's objection to offered testimony for the purpose of impeaching witnesses of the defendant?

"c. Did the defendant meet its burden of proof that a defect existed in the bail and that the defect was the cause of the loss and/or that the bail, Exhibit 13, was in fact purchased from the third party defendant?

"d. Did the trial court err in permitting, over the objection of third party defendant, non-expert oil field hands to testify as to their opinion as to why the bail broke?

"e. Did the plaintiff or the third party plaintiff put the third party defendant on notice that either of them claimed a breach of warranty?"

In presenting the first issue which is denominated as "a", appellant, in its statement of the case, sets out the proceedings and the trial court's ruling refusing counsel the right to cross-examine the witness. Nothing further appears in its brief. The fourth issue sought to be raised, set out herein, and appearing under the paragraph denominated as "d" is not further pursued after its first mention. Neither of these being mentioned thereafter in the brief and there being nothing by way of cogent argument or authority cited in support of either of these propositions, we will not consider these claimed errors. *Klatt v. Klatt*, Wyo., 654 P.2d 733, 738 (1982); *Barnette v. Doyle*, Wyo., 622 P.2d 1349, 1363 (1981).

Appellant's second claim of error is directed at the refusal of the trial judge to allow counsel to examine and introduce by his witness, Everette Alloway, certain conversations which he is alleged to have overheard while he was out of the courtroom between Richard Chalfant and other persons who had appeared as witnesses for the third-party plaintiff. The transcript sets out this incident as follows:

"Q. [By Mr. Wilmetti] Now, there was testimony here by Mr. Swasso, I think, or Mr. Lincoln, one or the other, anyway, one of the witnesses testified that as they were starting to fish for the pipe that was lost in the hole, that they, eventually, unscrewed the plug with the nut, the part of the bail that had broken off and the— the plug, the nut and the trunnion that had broken off together, and that they lost it. That was the testimony, that they got it off and that they lost it. Now, you have been present at the Courthouse throughout this trial, have you not?

"A. [By Mr. Alloway] Yes, sir.

"Q. And most of the time, where were you sitting?

"A. Most of the time I sat there in the head of the Judge's office reading them [sic] books.

"Q. Did you have any conversation, personally, with any of the witnesses?

"A. No.

"Q. Did you overhear any conversation between Mr. Chalfant, who testified here, and the other witnesses?

"MR. HOUSTON WILLIAMS: Just a minute, Your Honor. I'm going to object to this. We have excused those witnesses. We have no way of recalling them. If this testimony was known to counsel that it was going to come in, we should not have excused those witnesses and it's pure hearsay at this point. The witnesses are gone.

"THE COURT: Sustained.

"Q. (By Mr. Wilmetti) Let me ask you one other question here: As far as counsel or anyone knowing about any of this conversation that you overheard, did counsel know of this conversation, of your overhearing this until this morning?

"A. Not that I know of.

"THE COURT: Mr. Wilmetti, you know, I'm not, by my ruling, indicating in any-

way [sic] that it's your fault. However, the witnesses are now gone and the conversation that he may have overheard—there is no one here to examine as to that conversation, so that leaves the whole testimony of any conversation as hearsay and I just can't admit it.

"MR. WILMETTI: The purpose of this testimony, Your Honor, is not to, necessarily, show the proof of it, but to show the discrepency [sic] between what these witnesses testified to in Court and what they—what their conversation was outside.

"THE COURT: I'm sure that was the reason for the question. However, I sustained the objection. I'm not going to allow him to testify to this. That is the ruling of the Court.

"MR. WILMETTI: That is all at this time."

We are unable, even after a most careful and critical reading, to determine in any particular just what evidence or testimony or even the possible nature of the testimony which the appellant there sought to produce and which it now alleges was error not to receive. It would appear that unless the trial judge had some extrasensory perception or powers that he too must have been in the dark as to just what was the nature of the evidence sought to be adduced absent any offer of proof or even any suggested explanation of the nature of this testimony.

■ This court has long followed the rule that the party who seeks to elicit the evidence must make an offer of proof showing what that party expected to prove, failing in which he may not assert the exclusion as error. *Watson v. Klindt,* 73 Wyo. 402, 280 P.2d 282, 283 (1955); *Castor v. Rice,* 71 Wyo. 99, 254 P.2d 189, 190 (1953); *Tauer v. Williams,* 69 Wyo. 388, 242 P.2d 518, 524 (1952); *Chicago & N.W. Ry. Co. v. Ott,* 33 Wyo. 200, 237 P. 238, 240, reh. denied 238 P. 287 (1925); *Casper Motor Co. v. Marquis,* 31 Wyo. 115, 223 P. 764, 765 (1924).

The rule announced in these cases has never been disapproved or reversed; however, an exception has been grafted thereon which makes the rule inapplicable if, and

only if, "the nature of the expected testimony *clearly* appears." (Emphasis added.) *Gregg v. Gregg,* Wyo., 469 P.2d 406, 408 (1970); *Taylor v. MacDonald,* Wyo., 409 P.2d 762, 763 (1966). This rule and exception have been recognized and reiterated in Rule 103, W.R.E.

■ This exception is demonstrably inapplicable in this case. The reason for the rule is appropriately set out in this manner:

"* * * No offer was made indicating what the testimony of the witness would have been, and hence we cannot tell whether or not the error, if any, was prejudicial. * * *" *Chicago & N.W. Ry. Co. v. Ott,* supra, 33 Wyo. at 209, 237 P. 238.

Under these circumstances, this claim of error will not be further pursued.

■ The third issue presented for review which is denominated as "c" involves at least three separate legal propositions; i.e., the failure to prove a defect existed in the bail; that the defect was the cause of the loss; or that the bail was in fact purchased from the third-party defendant. The last two of these contentions pose only an attack upon the trial court's findings based upon disputed issues of fact. Although appellant seeks to reargue and secure from this court a different finding thereon, this would be improper. See *Agar v. Kysar,* supra.

■ Appellant's attack upon the sufficiency of the evidence to prove that a defect existed in the bail must be considered with the following rule in mind and by which this court is bound. This has been set out recently in this manner:

"We accept as true the evidence of the successful party, leave out of consideration entirely the evidence of the unsuccessful party in conflict therewith, and give the evidence of the successful party every favorable inference which may fairly and reasonably be drawn therefrom. [Citations.]" *Farella v. Rumney,* Wyo., 649 P.2d 185, 186 (1982).

By virtue of this rule we will not interfere with the trial court's finding unless it be clearly erroneous or manifestly wrong and totally against the evidence. *Farella v. Rumney,* supra at 186.

The bail, the failure of which occasioned this entire controversy, was purchased by Ormsbee Exploration Corporation from George Brown Supply Co. on July 27 or 28, 1980. It was delivered to LeRoy Lincoln who was a driller working on the rig. Lincoln took it from Kaycee to the rig and installed it on the night shift of July 28, 1980. The bail separated in some manner on August 7, 1980, causing a string of tools to be dropped into the hole. A fishing job for the pipe and tools lost in the hole was unsuccessful and the hole was therefore abandoned. The part of the bail which failed and caused this incident fell into the hole and remains there. At the time of the break the crew was tripping in; i.e., lowering the drill pipe into the hole. The pipe and tools being lowered weighed approximately 12,000 pounds. There is no rated capacity for such bail available but the same type bail has been observed by a witness to have been used to pull a weight of 55,000 to 60,000 pounds and it could well have withstood a direct pull of 100,000 pounds. Such bails are frequently used for loads three to four times as heavy as the load being lowered in this case. Had it not been defective, it could easily have withstood a pull of this character. This bail, which is described by all parties as a heavy-duty bail, had been in use from the night shift of July 28, 1980, until it broke on August 8, 1980. It had been employed in making 18 trips, making it so little used that it still had the paint which was on it when it was delivered. Bails of this character customarily last three to five years, which would have involved many more trips and much more usage than in this case. The failure of the bail was caused when an ear or pin broke off the so-called trunnion, which caused the entire weight of the pipe to be shifted to one side, bending and spreading the upper portion which held the trunnion until it slipped out and fell. Ormsbee testified, without objection, that

had the bail not been defective, "it could have easily held three to four times that much weight."

This case does involve a most difficult situation for both parties. The part that broke was not available to either party for examination or a metallurgist's opinion. Neither party was thus able to produce such evidence to assist the trier of the facts, although both proffered witnesses expressing opinions as to the cause of the mishap. However, recovery may be had although the defective product is not in evidence. *Colorado Serum Company v. Arp,* Wyo., 504 P.2d 801, 805–806 (1972).

Appellant, in this third-party proceeding, proposes two separate and distinct grounds for consideration which may require mention; i.e., the failure to prove a defect in the bail and that the bail, Exhibit 13, was purchased from this appellant. Although suggestion is made in the brief of the failure to prove that the break was the proximate or direct cause of this mishap, we find no serious contention that this was not the case.

Although Ormsbee had been originally mistaken as to the date upon which the bail was purchased, there is little question from the evidence that the court could find that the defective bail was sold by George Brown Supply Co. on July 28, 1980. Mr. Brown himself would only go so far as to say that there was a question and he did not know if he had sold this bail in face of the evidence which had been presented. There is little value in repeating the evidence in support of this finding of the trial court or in engaging in any discussion of the rule that was set out before in the case of *Agar v. Kysar,* supra.

The sufficiency of the proof of the defect does require examination. It is well to here consider what a defect is. In an earlier case, Justice Roger J. Traynor suggested a definition this court has cited with approval.

"'* * * A defective product may be defined as one that fails to match the average quality of like products, * * *'

32 Tenn.L.R. 367." *Maxted v. Pacific Car & Foundry Company,* Wyo., 527 P.2d 832, 835 (1974).

It has been further defined in this manner: " * * * A product is defective when it fails to perform reasonably and safely the function for which it was intended. * * * " *Drier v. Perfection, Inc.,* S.D., 259 N.W.2d 496, 504 (1977).

██ There is a burden upon the plaintiff to prove that the product was defective at the time it was delivered to him. *Colorado Serum Company v. Arp,* supra at 805–806. This is a case upon a warranty so that there can be no consideration of the doctrine of res ipsa loquitur. However, it has been said that the courts engage in "some of the same thinking found in res ipsa loquitur cases." 1 Hursh & Bailey, American Law of Products Liability 2d, § 3:80, p. 618 (1974). It may be conceded that proof of the failure of the article or its malfunction standing alone would not be sufficient to prove or to allow any inference that the tool was defective. It is, however, a strong circumstance to be considered along with the remaining facts and it has been held not to be necessary to prove a specific defect. This has been expressed in a case involving a warranty as follows:

"Proof of the specific defect in construction or design causing a mechanical malfunction is not an essential element in establishing breach of warranty. 'When machinery "malfunctions", it obviously lacks fitness regardless of the cause of the malfunction. Under the theory of warranty, the "sin" is the lack of fitness as evidenced by the malfunction itself rather than some specific dereliction by the manufacturer in constructing or designing the machinery.' [Citations.]" *MacDougall v. Ford Motor Company,* 214 Pa.Super. 384, 257 A.2d 676, 679 (1969).

See *Wojciechowski v. Long-Airdox Division of Marmon Group, Inc.,* 488 F.2d 1111, 1116–1117 (3rd Cir. 1973), citing the preceding case with approval and a full discussion. In the case of *Tweedy v. Wright Ford Sales, Inc.,* 64 Ill.2d 570, 2 Ill.Dec. 282, 357 N.E.2d 449 (1976), where the point was raised that the plaintiff had failed to prove that the car's brakes were defective, the court after a most informative discussion set out what we believe to be the proper rule.

"A prima facie case that a product was defective and that the defect existed when it left the manufacturer's control is made by proof that in the absence of abnormal use or reasonable secondary causes the product failed 'to perform in the manner reasonably to be expected in light of [its] nature and intended function.' * * * " 357 N.E.2d at 452.

██ The record here shows without dispute that this was a so-called heavy-duty bail which could be expected to last from three to five years of operation and to make many trips. It was only sustaining a weight of 12,000 pounds which was at least three to four times less than it might be expected to handle, and it had only made 18 trips in the 10½-day period of its use. There is evidence that this bail had not been subjected to any unusual treatment and was being used in its usual and intended use.

Under this factual situation, we cannot say that the finder of facts made an error in its determination that the bail was defective.

Appellant also seeks to raise the question that it did not receive proper notice of the breach of warranty as required by § 34–21–270, W.S.1977. This claim was first asserted in the brief of the appellant which was filed in this court. As a matter of fact, this was not even mentioned in the docketing statement as one of the issues to be presented upon this appeal.

██ There is no rule more firmly established or recognized than that the court will not consider questions first raised in this court on appeal. Questions not raised or asserted in the trial court, unless they be questions of jurisdiction or fundamental rights, are not properly before this court. *Matter of Parental Rights of PP,* Wyo., 648 P.2d 512, 519 (1982); *ABC Builders, Inc. v. Phillips,* Wyo., 632 P.2d 925, 942 (1981); *Matter of State Bank Charter Application*

of *Security Bank, Buffalo,* Wyo., 606 P.2d 296, 300 (1980); and cases cited in West's Wyoming Digest, Vol. 1 (1956), and its Cumulative Annual Pocket Part (1983), under Appeal and Error, Key Number 169. There is no suggestion by appellant that this matter involved either jurisdiction or fundamental rights. Thus, this question will not be discussed.

The judgment against George Brown Supply Co. as third-party plaintiff is affirmed.