Argued October 5, reversed and remanded November 22, 1977, petition for
rehearing denied January 4, 1978

# OREGON LUMBER COMPANY, *Respondent,*
## *v.*
# DWYER OVERSEAS TIMBER PRODUCTS CO.,
## *Appellant.*
## (No. 419-283, SC 25088)

571 P2d 884

Charles J. Strader, of Black, Helterline, Beck & Rappleyea, Portland, argued the cause and filed briefs for appellant.

Jack H. Cairns, Portland, argued the cause and filed a brief for respondent.

Before Denecke, Chief Justice, Tongue and Linde, Justices, and Gillette, Justice Pro Tempore.

GILLETTE, J., Pro Tempore.

**GILLETTE, J.,** Pro Tempore.

Plaintiff seller (Seller) filed this action to recover a balance allegedly due from the defendant buyer (Buyer) on a contract for the sale of lumber. Defendant denied there was a balance owing, contending that the lumber did not meet the grade it had ordered. Defendant also counterclaimed, seeking a partial refund of the amount already paid on the contract. The trial court, sitting without a jury, found for plaintiff; defendant appeals.

In late July or early August, 1973, Seller contacted Buyer about the possible sale of a shipment of lumber from a supply mill in Ecuador. Defendant, however, was only interested in buying a certain grade or quality of lumber — Grade No 1 Common, as provided in National Hardwood Lumber Association (NHLA) rules — and the Ecuador mill was not familiar with the NHLA grading system typically used in lumber transactions in the United States. Without relying on the NHLA uniform grading system, neither party could be certain about the quality of lumber that would be shipped. As a result, the parties agreed that Buyer's agent, Mr. Hurst, a man well versed in the grading of lumber, would visit the mill in Ecuador to inspect the lumber.

Hurst traveled to the mill site and explained to the mill personnel the quality of lumber in which he was interested. He showed them how to sort and ship only that material which would make grade. Satisfied that sufficient lumber of proper quality was available for the proposed shipment, Hurst notified both Seller and Buyer: "No NHLA grading or grader available * * * lumber will be equal to or better than portion inspected by Mr. Hurst." Based on Hurst's evaluation of the mill's lumber supply, Buyer sent a purchase order to Seller, dated August 29, 1973, requesting up to 350,000 board feet of hardwood lumber, "Grade No. 1, Common and better, allowing up to 15 percent No. 2

per NHLA rules and equal to portion inspected by Mr. Hurst." Seller immediately called Buyer:[1]

> "I see you have sent a purchase order on this thing, and the one thing that bothers me is that you've got a grade on there, and you and I know that there is just no way we can verify a grade * * *, [Hurst] has looked at that stock down there, and if he says it's No. 1 Common or better with 15 percent No. 2, that's okay with me, but you and I have to understand each other and know that there is no way in the world I can guarantee this grade is going to be anything whatsoever, because (1) I don't know anything about it; (2) I have never seen it and don't deal in it. As long as you and I can't guarantee that grade, which is the whole reason for sending [Hurst] down there, then I will sign it and send it back to you, but we have got to understand each other on this."

Seller then used the identical language requesting lumber "Grade No. 1 Common or better, allowing up to 15 percent No. 2 per NHLA rules and equal to portion inspected by Mr. Hurst," in the purchase order it placed with the Ecuador supply mill.

The lumber was delivered to Buyer's plant on October 9, 1973. Buyer promptly notified Seller of a substantial error in the footage count. A recount was made and the tally adjusted to 188,365 board feet of lumber by October 15. On October 31, Seller sent Buyer an invoice based on the corrected tally. Buyer then informed Seller that the documents were in order and Buyer would comply with the terms of the invoice.

Once the adjusted footage count was determined, Buyer began processing the lumber. The processing was done in batches. The first batch of material came through processing on November 7 or 8. Buyer immediately began to complain concerning the thickness of the lumber, but no specific complaints were made about quality or grade at that time. However, as more of the lumber came through the processing, Buyer

---

[1] So Seller testified. Buyer did not recall this specific conversation, but agreed that there were "many conversations" in which "the grade thing" was discussed.

began to complain that the lumber was not running to the expected grade.

Total payment of $38,000 was due on December 6; it was not paid. On December 8, Seller called Buyer. Buyer indicated that because the material was grading out poorly, Buyer would not make full payment, but that some partial payments would be made. Seller testified that at that point, "we knew we had a real problem."

By December 21, Buyer had made two payments on the contract totalling $25,165.67. Then in a letter to Seller dated January 11, 1974, Buyer detailed the problems with the transaction and offered to return the lumber it had been unable to sell. Only 42 percent of the shipment of lumber graded out to No. 1 or better, 45 percent graded out to No. 2, and 8 percent graded out to firewood quality. Based on the value of this tally, Buyer determined it had overpaid $5,671.65 and requested a refund of that amount.

■ Although the trial court made a general finding in favor of plaintiff in its judgment order, the trial judge stated from the bench that he was finding for Seller because Buyer had failed to notify Seller of the defects in the lumber within a reasonable time as is required by ORS 72.6070(3)(a) of the Uniform Commercial Code, and the briefs of both parties concentrated on this question.[2]

ORS 72.6070(3)(a) provides:

"(3) Where a tender has been accepted:

"(a) The buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy * * *."

---

[2] In its brief, Seller also complained that defendant failed to *plead* the giving of reasonable notice. *See Western Feed Co. v. Heidloff*, 230 Or 324, 342, 370 P2d 612 (1966). When an attack on the sufficiency of a pleading is made for the first time on appeal, " 'everything inferable from the language actually used is deemed pleaded'." (citations omitted) *Nicholson v. Jones*, 194 Or 406, 411, 242 P2d 582 (1952). The pleadings, liberally construed, infer the giving of notice. Seller suffered no prejudice; the issue was thoroughly litigated.

Comment 4 to the statute states:

"The time of notification is to be determined by applying commercial standards to a merchant buyer.
"* * * * *

"The content of the notification need merely be sufficient to let the seller know that the transaction is still troublesome and must be watched. There is no reason to require that the notification which saves the buyer's rights under ORS 72.6070 must include a clear statement of all the objections that will be relied on by the buyer, as under the section covering statements of defects upon rejection (ORS 72.6050). Nor is there reason for requiring the notification to be a claim for damages or of any threatened litigation or other resort to a remedy. The notification which saves the buyer's rights under ORS 72.1010 to 72.7250 need only be such as informs the seller that the transaction is claimed to involve a breach, and thus opens the way for normal settlement through negotiation." Legislative Counsel Committee, Oregon's Uniform Commercial Code, 1962.

Seller insists that it had not received any "real complaints" or evidence of Buyer's intention not to pay until after December 6, when Buyer indicated it would only make partial payment. Seller misconstrues the notice requirement under ORS 72.6070(3)(a). The notice is not required to assert Buyer's intention not to pay nor intention to make a claim for damages or pursue any other remedy. *Jay v. Zimmerman Co. v. General Mills, Inc.,* 327 F Supp 1198 (ED Mo 1973). Rather, the purpose of the notice is, as indicated by the comment, to "let the seller know the transaction is still troublesome and must be watched." *Metro Inv. Corp. v. Portland Rd. Lbr.,* 263 Or 76, 80, 501 P2d 312 (1972). The notice may be given in any manner or form sufficient to apprise the seller that there are problems with the transaction. *Lynx Inc. v. Ordnance Products,* 273 Md 1, 327 A2d 502 (1974). Thus, oral notice is sufficient, *International Paper Co. v. Margrove, Inc.,* 75 Misc 2d 763, 348 NYS2d 916 (1973). So is notice by phone call. *Smith v. Butler,* 311 A2d 813 (Md App

1973). Even Buyer's oral expressions of dissatisfaction, where acknowledged by Seller, may be sufficient. *R. I. Lampus Co. v. Neville Cement Products Corp.,* 232 Pa Super 242, 336 A2d 397 (1975).

■ Ordinarily, whether or not the notice is timely is a question of fact for the trier of fact, and a finding on that issue will not be disturbed on appeal. However, taking the facts and the inferences to be drawn from those facts in the light most favorable to the plaintiff, we still find that the notice given in this case was timely as a matter of law. *See, Metro Inv. Corp. v. Portland Rd. Lbr., supra,* 263 Or at 81.

■ Seller became aware of problems in the transaction during November. Seller's president testified that prior to November 5, they had received some complaints that the lumber was not grading out as anticipated but "nothing of a substantial nature." But, at least by late November, Seller admitted to "getting some signs that there were some problems," and stated that "the more they got into the lumber [as it was processed], the more the complaints came." Seller was certainly aware of the problems by November 30 when it sent a telex to its Ecuador supplier informing the supplier that there was a problem with the shipment, that much of the lumber was running to No. 2 grade, and that the Buyer would not be interested in re-ordering except upon certain conditions. This shows that Seller had notice as required by ORS 72.6070(3)(a) that the transaction was troublesome and should be watched.

Even assuming that Buyer's failure to pay in full on December 6 was the first time Seller received "notice" of problems with the transaction — an assumption we think inappropriate in view of the uncontradicted evidence that Seller was aware that a problem existed earlier — this would not constitute an unreasonable delay in notification. ORS 72.6070(3)(a) requires notice to be given at the time when Buyer knew or

should have known of the defects in the goods. Notification of defects presupposes a reasonable time for inspection for defects. *See Lanners v. Whitney,* 247 Or 223, 234-35, 428 P2d 398 (1967). Seller was notified of defects within one month from the date that the first batch of the large shipment of lumber was processed through the Buyer's dry kiln on November 7. Notice within 30 days was timely. The Seller was given adequate opportunity to investigate and minimize its damages.

■ As we have noted, the trial judge indicated from the bench that he was basing his ruling on notice. However, he subsequently issued a general finding in favor of plaintiff. If there is any substantial evidence to support the trial court's judgment under some other theory of the evidence, we must affirm. We find none.

Plaintiff offers in its favor evidence that the agreement was not as it was represented by the purchase order. In spite of the detailed language specifying "Grade No. 1 or better allowing 15 percent No. 2" in the telex from Hurst, the purchase order from Buyer to Seller, and the purchase order from Seller to supplier, Seller contends there was not an agreement as to grade, because grading was an unworkable concept at the Ecuador mill. Seller's position is that, with no agreement as to grade, there would be no breach in shipment about which Buyer could complain.

■ Both parties agree that Seller made no guarantee as to NHLA grade. Seller did agree, however, to sell lumber equal in quality to that which Hurst selected while at the Ecuador mill. Seller thereby bound itself to see that Buyer received what Hurst had selected. To hold otherwise would mean that Seller could have delivered 350,000 board feet of firewood and Buyer would be without recourse. We decline to give such an absurd construction to the agreement.

The judgment of the trial court is reversed and the case is remanded to the trial court for such further

proceedings if any, as may be necessary to adjudicate Buyer's counterclaim.

Reversed and remanded.