21017

SOUTHEASTERN STEEL COMPANY, INC., Appellant, v. BURTON BLOCK AND CONCRETE COMPANY, INC., Respondent.

(258 S. E. (2d) 888)

*J. Thomas Mikell,* of *Harvey, Battey, Macloskie & Bethea,* Beaufort, and *James H. Messervy,* of *Messervy & Them,* Summerville, *for Appellant.*

*Barry L. Johnson,* of *Dowling, Sanders, Dukes, Novit & Svalina,* Beaufort, *for Respondent.*

September 26, 1979.

NESS, Justice:

Heretofore on the 31st day of July, 1979, this Court filed its opinion in this case. It is now before us as a result of a petition for a rehearing. Upon a consideration of the petition, it is ordered that the last paragraphs of our former opinion be withdrawn and the following substituted therefor.

The appellant, Southeastern Steel Co., Inc., brought this breach of contract action against the respondent, Burton Block and Concrete Co., Inc., seeking $27,236.21 for steel reinforcement bars (rebar) delivered to respondent. Burton claimed an offset of $14,306.09 for defective materials and $2,291.48 in sales tax exemptions.

Upon referral of the issues by consent, the special referee concluded that Southeastern, the seller, should have judgment for $27,236.21 against Burton, the buyer, and that Southeastern should apply to the South Carolina Tax Commission for a refund of the sales tax paid and reimburse that amount to Burton. The trial court reversed in part, reducing Southeastern's judgment to $10,633.68, allowing the offset claimed by Burton. We reverse in part, concluding that the trial court's decision to allow the $14,306.09 offset for defective materials was controlled by an error of law. We affirm in part, concluding that Burton was entitled to an offset of $2,291.48 for sales tax exemptions.

This litigation involves the Beaufort Waterfront Project, a plan to construct a seawall with landscaped parks designed to place more recreational and economic emphasis on the bay. Some of the construction included prestressed concrete, or concrete containing steel bars for increased strength.

Burton was a subcontractor in the project to furnish the prestressed concrete members. Its first fabricator of rebar, Savannah Steel Co., ceased supplying the steel bars because Burton refused to pay for the materials ordered. Burton then contracted with Southeastern to supply rebar, and 31 different deliveries were made to Burton's job site by Southeastern.

According to Burton, the deliveries were inspected at once, and complaints of nonconforming and/or defective rebar were made by telephone to Southeastern. Southeastern denied receiving any such notification until it instituted this suit for the balance due on the contract. At the time of the hearing, the disputed materials were still located on the Burton job site.

The disposition of this case turns on whether the alleged oral notice of defects purportedly given to Southeastern was sufficient to establish Burton's rejection of the goods under the Uniform Commercial Code. The special referee concluded it was not, and held that Burton had failed to notify Southeastern of any defective or nonconforming items within a reasonable time. The trial court held the alleged oral notice was sufficient to constitute rejection by Burton. We disagree.[1]

South Carolina Code § 36-2-602 provides the UCC formula for rejection:

"(1) Rejection of goods must be within a reasonable time after their delivery or tender. It is ineffective unless the buyer seasonably notifies the seller."[2]

---

[1] Although respondent challenges the exceptions raised by appellant under the case of *Parnell v. Carolina Coca-Cola Bottling Co.*, 231 S. C. 426, 98 S. E. (2d) 834 (1957), we conclude appellant's exceptions are proper.

[2] As respondent takes the position it never accepted the allegedly defective goods, it is unnecessary for us to consider whether Burton revoked its acceptance pursuant to Code § 36-2-608 or reserved its breach of warranty claim under Code § 36-2-607.

In commenting on the above code section, White and Summers state:

"Section 2-602 provides that a buyer who wishes to reject must 'seasonably notify' the seller . . . *Needless to say such rejection . . . notice should be in writing, and it should be carefully drafted*. Those who have depended upon nonwritten notice or equivocal notice of rejection have not fared well in the courts." (Emphasis supplied). White and Summers, Uniform Commercial Code, § 8-3, p. 265 (1972).

There was no evidence of rejection other than testimony of Burton's alleged telephone calls to Southeastern. While Burton's witnesses conceded that written notice of defects amounting to over $14,000.00 in offsets would have been the better business practice, none was given. Respondent's counsel was unable to cite this Court to any case holding oral notice to be sufficient. Although Code § 36-2-602 does not explicitly require written notice, we believe the better view is that oral notice is ineffective to constitute rejection under the UCC, particularly where there is conflicting evidence of its receipt and the purchaser retains possession of the goods.

In *Julian C. Cohen Salvage Corp. v. Eastern Electric Sales Co.*, 205 Pa.Super. 26, 206 A. (2d) 331 (Pa. 1965), the Court considered whether a buyer of cable had effectively notified the seller of its rejection under UCC § 2-602. In concluding the seller was entitled to a verdict in the total amount sought, the court stated:

"In order to avoid the conclusion that defendant had accepted the cable, defendant offered testimony that it had notified plaintiff of its rejection shortly after the cable was received. However, there was no written notice of rejection. Moreover, the testimony that defendant notified plaintiff of the rejection of these goods is not credible, particularly in view of the fact that defendant still has the cable in its possession and has never offered to return it or attempted to return it to the plaintiff." 206 A. (2d) at 334.

See also *Grossman v. D'Or*, 98 Ill. App. (2d) 198, 240 N. E. (2d) 266 (1968), holding telephonic notice insufficient under a companion section of the UCC.

It is inconceivable to this Court that a business concern, claiming an offset of more than $14,000.00, would not have registered its compaints to the supplier in *writing*. We hold the trial court committed an error of law in concluding that oral notice of rejection suffices under the UCC, under the facts of this case.

The only issue remaining for our decision is whether Burton is entitled to an offset for the amount of sales tax charged by Southeastern. S. C. Code § 12-35-510 provides: "In addition to all other licenses, taxes and charges imposed, there is levied for the support of public schools of the State, upon every person engaged or continuing within this State *in the business of selling at retail* any tangible personal property whatsoever, including merchandise and commodities of every kind and character . . ., an amount equal to four percent of the gross proceeds of the sales of the business." (Emphasis supplied). This statute expressly imposes the burden of the sales tax upon the seller, Southeastern in this case. Accordingly, we affirm the trial court's decision to allow Burton an offset for sales taxes charged by Southeastern, and hold that Southeastern is the power party to seek a refund for all such taxes paid to the South Carolina Tax Commission. Therefore, judgment should be awarded to Southeastern for $24,944.73, the amount claimed less the sales tax paid.

Lewis, C. J., and Littlejohn, Rhodes and Gregory, JJ., concur.