Warren AGAR, d/b/a Vermeer Baler Sales, and Vermeer Manufacturing Company, Appellants (Defendants),

v.

Mary KYSAR, Personal Representative of the Estate of Joe Kysar, Deceased, Appellee (Plaintiff).

No. 5400.

Supreme Court of Wyoming.

May 29, 1981.

James M. Guill and Richard W. Day of Goppert, Day & Olson, Cody, signed the briefs; and James W. Guill, Cody, appeared in oral argument on behalf of appellants (defendants).

Dick L. Kahl and Ross D. Copenhaver of Copenhaver & Kahl, Powell, signed the brief; Dick L. Kahl, Powell, appeared in oral argument on behalf of appellee (plaintiff).

Before ROSE, C. J., and RAPER, THOMAS, ROONEY and BROWN, JJ.

RAPER, Justice.

The district judge in a breach of warranty action brought by appellee, buyer of a

hay baler, held for appellee and gave judgment against appellants, sellers, for the entire purchase price, interest, cost of repairs, and court costs and directed return of the baler to appellants upon payment of the judgment. Presented to us in this appeal are three questions which we must answer. First, we must ascertain whether the theory of this case should properly be categorized as a breach of warranty or revocation of acceptance. Second, we must determine whether there was sufficient evidence to support the district court's conclusion that the baler delivered by appellant to appellee failed to perform as promised. Third, we must decide whether the district court used the proper measure to compute damages.

We will affirm the court's general holding for appellee but reverse as to relief awarded and remand for a reconsideration of damages.

## I

In November or December of 1977, Joe Kysar (appellee)[1] contacted Warren Agar (appellant) about purchasing a baler to use on his farm. He stated that he needed one that could make a 3,000-pound bale. Agar, a sales representative for Vermeer Manufacturing Company (appellant), indicated that Vermeer had a baler known as the Vermeer Model 706C Baler which would produce bales weighing 3,000 pounds. Appellee thought it sounded good and agreed to buy for $8,125. However, no service contract was obtained.

After the baler was received on June 1, 1978, appellee turned it over to an employee, Jim Liner, to operate. It was used during the first and second cuttings in the summer of 1978. In the course of that summer, Liner noted numerous problems with the new baler:

"The slipped clutch on the drive train went out two or three times. The bearings that support the rollers on the bottom of the baler went out several times. Numerous welds broke throughout the frame of the baler. The idler rollers that support the belt, they broke out. The windfingers that the hay travels underneath fell off numerous times. The large guards on the side of the baler that covers the chain supporting brackets, it broke off."

But more importantly, the baler failed to produce a bale as large as the one that had been promised. Appellee testified that the bales which were produced averaged 1,400 pounds during the course of the summer cuttings.

After contacting Agar concerning the problems with the baler and failing to receive satisfaction, appellee called the factory. The engineers there suggested some new parts which they sent out. Appellee paid for these parts and then installed them, but the machine continued producing the same size bales. Nonetheless, appellee managed to struggle through the summer with the Vermeer baler.

On February 12, 1979, appellee commenced this action by filing a complaint against both Agar and Vermeer Manufacturing. In the complaint it was alleged that the defendants, by delivering a baler which failed to produce the 3,000-pound bales promised, breached the warranty implied by law under § 34–21–232, W.S.1977 (U.C.C. § 2–315).[2] As a result, appellee asked for the return of the purchase price, the cost of the replacement parts, as well as incidental and consequential damages.

A nonjury trial was held in the matter on July 8, 1980. At its close, the district court judge observed:

"THE COURT: Gentlemen, it is the Court's opinion after listening to the tes-

---

1. Though Joe Kysar is since deceased, we will refer to him as appellee for purposes of this opinion.

2. Section 34–21–232, W.S.1977 (U.C.C. § 2–315):
   "Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose."

timony today that the Plaintiff has established his case by a general, by a preponderance of the evidence.

\*       \*       \*       \*       \*       \*

"Therefore, the Court is granting the relief requested for in Plaintiff's Amended Complaint insofar as sub paragraph A. is concerned. Sub paragraph B. and G, but I agree with you one hundred percent, Mr. Day, there was nothing whatsoever insofar as consequential damages are concerned in the sum of $1,510.00. The Court is not going to allow that in light of the failure to put on any evidence concerning it."

The court further ordered appellee upon receipt of the purchase price to return the baler to Vermeer. Accordingly, judgment was entered in favor of appellee on July 24, 1980 and later amended on September 2, 1980.

## II

Frequently under the Uniform Commercial Code which Wyoming has adopted, the necessary proof as well as the appropriate remedy vary greatly depending upon the precise description of the claim. As a result, when cases arise under the Code, we must be concerned with what many view as mere technicalities. This is particularly true when reviewing issues concerning the sufficiency of the proof and the propriety of the measure of damages.

■ Of course, we must affirm on appeal if there exists any legally valid ground which appears in the record supporting the judgment. *Wightman v. American National Bank of Riverton*, Wyo., 610 P.2d 1001 (1980). However, our job becomes complicated when we are presented with a judgment which fails to articulate clearly the

reasoning behind it. This is particularly true where, as here, a complex statutory scheme is involved which entails many intricacies. Thus, in this case it is best to ascertain the appropriate legal theory in which the case should be viewed before considering the specific issues raised.

There are two competing rules to be considered. The first one was actually incorporated into the complaint. It arises from § 34–21–232, W.S.1977 (U.C.C. § 2–315), supra. It is commonly referred to as the implied warranty of fitness for a particular purpose. As applied to this case, it would impose liability upon the appellants if (1) they had reason to know that appellee had relied upon them to provide him with a baler which would produce 3,000-pound bales, and (2) they failed to furnish him with such a baler.

The second rule is found in § 34–21–271, W.S.1977 (U.C.C. § 2–608).[3] It is referred to as revocation of acceptance. Under it a buyer must establish that after accepting goods he either found a previously undiscoverable defect or nonconformity, or that the goods were accepted and retained on the assumption that the defect or nonconformity would be seasonally cured by the seller. The buyer then may within a reasonable time notify the seller of the revocation of his acceptance.

" \* \* \* Needless to say such rejection or revocation notice should be in writing, and it should be carefully drafted. Those who have depended upon nonwritten notice or equivocal notice of rejection have not fared well in the courts." (Footnote omitted). White and Summers, Uniform Commercial Code § 8–3, p. 265 (1972).

■ The principal difference between proceeding under an implied warranty and

---

**3.** Section 34–21–271, W.S.1977 (U.C.C. § 2–608):

"(a) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it:

"(i) On the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or

"(ii) Without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery

before acceptance or by the seller's assurances.

"(b) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

"(c) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them."

a revocation of acceptance is that under the former the buyer retains the goods while under the latter the goods are returned to the seller. Therefore, the "[n]otice of revocation of acceptance need not be in any particular form or use particular words if the buyer has adequately informed the seller that he does not want the goods and does not wish to retain them." *Boysen v. Antioch Sheet Metal, Inc.*, 16 Ill.App.3d 331, 306 N.E.2d 69, 71 (1974). See also *Southeastern Steel Company, Inc. v. Burton Block and Concrete Company, Inc.*, 273 S.C. 634, 258 S.E.2d 888 (1979), where the court, after finding no cases contra, held that a notice of rejection must be in writing.

In this case there is no evidence that appellee ever notified Agar or Vermeer that he wanted to revoke his acceptance. It would appear that appellee merely complained about the problems he was having with the baler in an attempt to get the appellants to correct it. Then after receiving no assistance, he commenced this lawsuit. However, the complaint cannot constitute notice of revocation of acceptance because it alleged breach of warranty which under the Code implies appellee intended to retain the baler.

The conclusion follows that the district court could not have found for the appellee under a revocation of acceptance approach, § 34–21–271, W.S.1977 (U.C.C. § 2–608); thus, this case must viewed as an action arising under warranty.

### III

Next, we must consider whether there was sufficient evidence to support the district court's conclusion that the appellants breached the implied warranty of fitness for a particular purpose. In particular, appellants contend that the appellee failed to demonstrate that the Vermeer baler did not perform as warranted.

However, when reviewing cases before us on appeal, we are compelled to accept the evidence of the prevailing party as true. *Wallis v. Luman*, Wyo., 625 P.2d 759 (1981). We will not disturb the trier of fact's findings unless the findings are so totally in conflict with the great weight of the evidence that they may be properly categorized as irrational. *Palmeno v. Cashen*, Wyo., 627 P.2d 163 (1981).

Here, we believe that under the doctrine of implied warranties there is sufficient evidence to justify upholding the district court's determination that the appellee had carried his burden of proof. All the evidence produced at trial indicates that when appellee approached Agar about purchasing a baler, he asked for one that would produce bales weighing between 2,500 and 3,000 pounds. Agar admitted claiming that the baler sold to appellee would make a bale suitable in size. Further, appellee as well as his employees testified that the baler during the haying in the summer of 1978 never produced bales as large as those promised by Agar. Even Agar acknowledged having at that time received complaints from appellee that the bales he was getting out of the baler were too small. Accepting this evidence as true, as we are bound to, it is sufficient to establish that (1) there was an implied warranty of fitness for a purpose if not an express warranty under § 34–21–230, W.S.1977 (U.C.C. § 2–313),[4] and (2) the warranty was breached.

4. Section 34–21–230, W.S.1977 (U.C.C. § 2–313):

"(a) Express warranties by the seller are created as follows:

"(i) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise;

"(ii) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description;

"(iii) Any sample or model which is made part of the basis of·the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

"(b) It is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee' or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty."

Thus, the district court's finding of liability must be affirmed.

## IV

We now must decide whether the district court used the proper measure of appellee's damages. Here the district court ordered appellants to return to appellee the purchase price as well as repair costs incurred by appellee while trying to fix the baler. This may have been the proper award under a revocation of acceptance, though we need not and do not so decide, but it is not the correct relief to be applied for breach of warranty.

Section 34–21–293(b), W.S.1977 (U.C.C. § 2–714(2)):

"(b) The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount."

Under subsection (c) of § 34–21–293, W.S. 1977,[5] consequential and incidental damages are also allowed in the proper case. These are to be computed in accord with § 34–21–294, W.S.1977 (U.C.C. § 2–715):

"(a) Incidental damages resulting from the seller's breach include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach.

"(b) Consequential damages resulting from the seller's breach include:

"(i) Any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and

"(ii) Injury to person or property proximately resulting from any breach of warranty."

Ordering the return of the purchase price was not the proper award in this case under the Code. Had appellee revoked his acceptance in accord with § 34–21–271, W.S.1977 (U.C.C. § 2–608), an entirely different question could have been presented, which may have led to a different result under the Code.[6]

Since the relief award does not comport with the Code, the case must be remanded for a recomputation of the damages.

Affirmed on the basis that the trial judge held there was a breach of warranty, but reversed and remanded only for the limited purpose of the further taking of evidence, if necessary, and redetermination of appellee's damages consistent with this opinion.

---

5. Section 34–21–293(c), W.S.1977 (U.C.C. § 2–714(3)):

"(c) In a proper case any incidental and consequential damages under the next section [§ 34–21–294] may also be recovered."

6. Appellants claimed they were entitled to a sum equal to the rental value of the baler for the summer of 1978; however, since there has been no revocation of acceptance, the baler still belongs to appellee and appellants are not entitled to rent.