1152

Gerald L. HAULBROOKS, Appellant v. Steve OVERTON and State Telecasting Co., Inc., d/b/a WCBD-TV Channel 2, Respondents.

(368 S. E. (2d) 676)

Court of Appeals

*William L. Pope*, Columbia, and *Thomas S. Tisdale*, Charleston, *for respondents.*

Heard March 23, 1988.

Decided May 9, 1988.

SHAW, Judge:

Gerald L. Haulbrooks sued Steve Overton and State Tele-casting Co., doing business as WCBD-TV Channel 2, for libel in news broadcasting. From an order granting Overton and Channel 2 a directed verdict, Haulbrooks appeals. We affirm.

Haulbrooks is the chairman of the Saint Andrews Parks and Playground Commission, and claims he was defamed by three news broadcasts reported by Overton on Channel 2. Overton's investigation began as the result of a SLED investigation aimed at Charlie Low, Director of the Commission. Prior to December of 1981, Low had improperly used materials and labor of the playground department in his personal home. As a result of the investigation, Low resigned and agreed to make restitution. During the SLED investigation, other matters were discovered. SLED found Low's daughter, a full time employee of the Commission, was charging gas for her personal car to the Commission's account at a local service station. In addition, SLED discovered Low and Haulbrooks had taken a trip to Pittsburgh in July of 1981 using the Commission's funds. The trip was allegedly to acquire ideas about installation and operation of racquetball courts.

No one else on the Commission was aware of the trip until informed of it by SLED the following December or January.

On January 26, 1982, Overton attempted to contact Haulbrooks. Haulbrooks did not return his call because of the ongoing SLED investigation, but this explanation was never given to Overton. On February 5, 1982, Overton visited Haulbrooks' office, but Haulbrooks refused to meet with him. Later that afternoon, Overton called to request documents relating to the Pittsburgh trip and gas purchases by Low's daughter. Haulbrooks responded that he was not authorized to release the documents, but referred Overton to the Commission's attorney. On February 23, 1982, Overton wrote to Haulbrooks requesting to inspect or copy the Commission's record. The commission's attorney advised the request need not be honored.

Around March 24, 1982, Haulbrooks received a phone call from Frank Sullivan, the secretary of the Charleston County Legislative Delegation, inquiring on behalf of Representative John Bradley relative to the request for records and Haulbrooks' refusal. Later that same day, the Commission's attorney called Haulbrooks and advised his previous advice was incorrect and the records should be released. Haulbrooks then set up a meeting with Overton for March 26, 1982 for Overton to review the records. Overton cancelled the meeting ten minutes before it was scheduled, and requested that Haulbrooks allow someone to pick up the records. Haulbrooks refused, but set up a new appointment for March 31, 1982. Overton succeeded in reviewing the records on March 29, 1982.

Haulbrooks claims six statements from three broadcasts by Overton were libelous and that the trial judge erred in directing a verdict in favor of Overton and Channel 2. We disagree.

In reviewing a directed verdict, it is true we must view the evidence and all reasonable inferences in the light most favorable to the party opposing the granted motion, however, we cannot ignore facts unfavorable to that party and must determine whether a verdict for the party opposing the motion would be reasonably possible under the facts. *Bultman v. Barber*, 277 S. C. 5, 281 S. E. (2d) 791 (1981). When a libel action is brought by a public official

or public figure, the plaintiff is required to establish a defamatory falsehood which was made with actual malice, i.e., with knowledge of falsity or reckless disregard of whether it was false or not. *Beckham v. Sun News*, 289 S. C. 28, 344 S. E. (2d) 603 (1986). This heightened burden of proof for public officials and public figures requires an affirmative showing by the plaintiff that the defamatory statement was false.

Haulbrooks' complaint centers on the following six statements made by Overton in the three broadcasts:

1. "... a trip to Pittsburgh by Commission representatives to view racquetball courts, all on the taxpayers tab, was something more than just a business trip."

2. "Documents obtained by Channel Two Eyewitness News today also reveal that the department spent $945 to send Low and Haulbrooks to Pittsburgh, Pennsylvania to review racquetball courts. The expense was not approved by the full commission ..."

3. "[Gerald Haulbrooks] repeatedly refused to return Channel Two phone calls."

4. "... Low's daughter had been charging gasoline and auto repairs to the department. The same sources say department commission chairman Gerald Haulbrooks authorized the expenses without the approval of the whole commission."

5. "Haulbrooks failed to respond within the legally prescribed time when we asked for materials."

6. "... the whole commission was not always aware of expenses approved by the Chairman and Director."

The truth of the matter is a complete defense to an action based on defamation and evidence establishing a statement is substantially true is a sufficient defense. *Ross v. Columbia Newspapers, Inc.*, 266 S. C. 75, 221 S. E. (2d) 770 (1976). Even if the statements could be considered libelous, the record reflects they were substantially true. *Dauterman v. State-Record, Co.*, 249 S. C. 512, 154 S. E. (2d) 919 (1967).

As to the first statement, the evidence reflects Haulbrooks and Low stayed at Low's sister's home in Pittsburgh while no one else on the Commission was informed of the

trip. The second statement was substantially true because the trip was unapproved at the time it was taken in July of 1981. It wasn't until the following winter the Commission was informed of the trip. A blanket, general approval of all previous trips during a February, 1982 meeting of the Commission was not enough to make the statement false.

The third statement was undeniably true as Haulbrooks himself admitted his failure to return phone calls. Evidence shows the fourth statement to be substantially true as Haulbrooks signed the checks for the Commission and was in a position to approve or question the expenses.

As to the fifth statement, Overton made a written request for the documents. Haulbrooks failed to respond within the fifteen day time period prescribed by § 30-4-30(c) of the South Carolina Code of Laws, 1976 (as amended). Finally, as to the sixth statement, Haulbrooks and Low travelled to Pittsburgh without knowledge by the full Commission, writing Commission checks for $645 for airfare and $300 for expenses.

For the foregoing reasons, the order granting the defendants a directed verdict is

Affirmed.

CURETON and GOOLSBY, JJ., concur.