1466

SOUTHEASTERN STEEL COMPANY, Respondent v. W. A. HUNT
CONSTRUCTION COMPANY, INC., Appellant.

(390 S.E. (2d) 475)

Court of Appeals

*Andrew K. Epting, Jr.,* and *W. Andrew Gowder, Jr., Wise &
Cole,* Charleston, *for appellant.*

*James E. Chellis,* of *Chellis & Mortimer,* Summerville, *for
respondent.*

Heard Nov. 7, 1989.

Decided Feb. 26, 1990.

SANDERS, Chief Judge:

This case arises under Section 2-607(3)(a) of the Uniform

Commercial Code. Respondent Southeastern Steel Company and appellant W.A. Hunt Construction Company, Inc. entered into a contract, by the terms of which Southeastern Steel agreed to supply certain goods, consisting of steel and steel products, to be used by Hunt in connection with two construction projects. Southeastern Steel supplied the goods and thereafter sued Hunt, alleging an amount due under the contract. Hunt stipulated the amount allegedly due but pleaded it was entitled to a set-off because of "the unworkmanlike performance of Southeastern Steel." Summary judgment was granted for Southeastern Steel in the amount stipulated. The case then proceeded to trial on the issue of whether Hunt was entitled to a set-off. At the close of the evidence, the trial judge directed a verdict for Southeastern Steel on the ground that Hunt had not given it the notice required by Section 2-607(3)(a). We affirm.

## I

In reviewing a decision to grant a motion for a directed verdict, we determine whether a verdict for the party opposing the motion would be reasonably possible under the facts. We view the evidence in the light most favorable to the opposing party, and we give that party the benefit of all reasonable inferences. We cannot, however, ignore facts unfavorable to the party opposing the motion. *Haulbrooks v. Overton,* 295 S.C. 380, 368 S.E. (2d) 676 (Ct. App. 1988). Viewed in the light most favorable to Hunt, the evidence can be fairly summarized as follows.

W. A. Hunt, the president of Hunt, testified his company had numerous problems with the steel and steel products. He testified that they contained defects and that this resulted in delays. He testified he told Southeastern Steel about the problems. He acknowledged that Southeastern Steel made efforts to correct the defects, and that the corrected goods were ultimately used in the construction projects, but he testified that Hunt was nevertheless damaged. He testified that he and other Hunt employees corrected some of the defects at their expense and that Hunt was penalized for being late in completing one of the projects. He testified as to the amount of the alleged damages.

Mr. Hunt acknowledged that he met with the president of Southeastern Steel to discuss the balance due on the account. He admitted that, after adjusting for an error, "the balance of the account, approximately $10,000, was legitimate." He also admitted he did not "attempt at that time, to resolve any of these claims for set-offs back against the faulty work." (Hunt does not dispute the conclusion of the trial judge that "Mr. Hunt presented no evidence that [Hunt] notified [Southeastern] of any back charges for [its] shortcomings in the performance relative to the delivery of steel and steel products [to either of the construction projects].")

The president of Southeastern Steel testified that, during the meeting with Mr. Hunt, he specifically asked "if there were any other problems or anything else [which] needed to be taken care of [and that] Mr. Hunt never responded to any back charges or any charges whatsoever he made against the company." He further testified that he did not learn of the alleged damages or the claim for a set-off until his attorney took the deposition of Mr. Hunt. His testimony on both points was uncontradicted by Mr. Hunt or any other witness.

## II

The dispositive issue in this case is whether Hunt gave Southeastern Steel the notice required by Section 2-607(3)(a).

Section 2-607(3)(a) provides, in part, as follows:

(3) Where a tender has been accepted

(a) the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy . . . .

Section 36-2-607(3)(a), Code of Laws of South Carolina, 1976.

The trial judge ruled: "[Since Hunt] did not within a reasonable time after [it] discovered the breaches in perfor-

---

[1] The trial judge ruled further that Hunt is barred from any remedy because it did not give Southeastern Steel notice of breach in writing. In reaching this conclusion, the judge relied on a previous case where Southeastern Steel was also the plaintiff: *Southeastern Steel Co. v. Burton Block & Con. Co.*, 273 S.C. 634, 258 S.E. (2d) 888 (1979). There, our Supreme Court considered whether an oral notice of a rejection of goods was sufficient. The manner and effect of a rightful rejection of goods is governed by another section of the Uniform Commercial Code, Section 2-602. The Court held:

mance notify [Southeastern Steel] of such breaches, [Hunt] is barred from any remedy." [1]

Section 2-607(3)(a) does not prescribe any form for the required notice. The absence of specific guidelines has forced courts to develop standards for determining what constitutes adequate notice. Some courts have held that almost any complaint will satisfy the requirement. *E.g., Oregon Lumber Co. v. Dwyer Overseas Timber Products Co.*, 280 Or. 437, 571 P. (2d) 884 (1977).[2] The standard adopted by these courts is known as "the lenient standard of notification." Other courts require the buyer to notify the seller that the buyer considers the seller to be legally in breach. *E.g., Eastern Airlines v. McDonnell Douglas Corp.*, 532 F. (2d) 957 (5th Cir. 1976).[3] The standard adopted by these courts is known as "the strict standard of notification."

*Oregon Lumber* illustrates the application of the lenient standard. There, the buyer bought timber of a particular grade from the seller. On several occasions, the buyer informed the seller that the lumber was below grade. However, the buyer continued to accept deliveries of the timber and made several payments before refusing to pay the balance due under the contract. The Court ruled the early

"[W]e believe the better view is that oral notice is ineffective to constitute rejection under the UCC, particularly where there is conflicting evidence of its receipt and the purchaser retains possession of the goods." *Id.* at 637, 258 S.E. (2d) at 889. The trial judge reasoned that "there is no reason to distinguish between the manner of notification of rejection from the manner of notification of other non-conformities in commercial transactions." Thus, he ruled that the notice of a breach pursuant to Section 2-607(3)(a), like the notice of a rejection pursuant to Section 2-602, must be in writing. The essential logic of his ruling is compelling. However, because we conclude that Hunt did not give the notice of breach required by Section 2-607(3)(a), it is unnecessary for us to decide whether the trial judge was correct on this point.

[2] *See also, e.g., Royal Typewriter Co. v. Xerographic Supplies Corp.*, 719 F. (2d) 1092 (11th Cir. 1983) (numerous complaints concerning copiers); *Wilson v. Marquette Elec., Inc.*, 630 F. (2d) 575 (8th Cir. 1980) (complaints that a computer was not working properly); *AES Technology Syss., Inc. v. Coherent Radiation*, 583 F. (2d) 933 (7th Cir. 1978) (complaints expressing unhappiness with the performance of a laser).

[3] *See also, e.g., K&M Joint Venture v. Smith Int'l, Inc.*, 669 F. (2d) 1106 (6th Cir. 1982) (notification insufficient when machine buyer continued ordering and paying for repair and replacement parts for machine without protest); *Southern Ill. Stone Co. v. Universal Eng'g Corp.*, 592 F. (2d) 446 (8th Cir. 1979) (concluding that Illinois has endorsed the *Eastern Air Lines* standard); *Standard Alliance Industries v. Black Clawson Co.*, 587 F. (2d) 813 (6th Cir. 1978).

complaints of the buyer met the notice requirement of Section 2-607(3)(a). The Court held: "The notice may be given in any manner or form sufficient to appraise the seller that there are problems with the transaction." *Oregon Lumber*, 280 Or. at 442, 571 P. (2d) at 887. The Court further held that, when the buyer notifies the seller of a problem with the transaction, the buyer need not assert the "intention to make a claim for damages or pursue any other remedy." *Id.*

*Eastern Airlines* is the leading case adopting the strict standard. There, the buyer purchased aircraft from the seller for delivery in set intervals. The seller fell behind in the deliveries. The buyer at first indicated that it considered the seller to be in breach, but it thereafter indicated by its behavior that it was willing to accept late deliveries. The Court held: "The purpose of the notice is to advise the seller that he must meet a claim for damages." *Eastern Airlines*, 532 F. (2d) at 972. The Court reasoned that, by indicating its willingness to accept late deliveries, the buyer may have lead the seller to believe it did not intend to take legal action. The Court held that Section 2-607(3)(a) requires the buyer to inform the seller that "the transaction is claimed to involve a breach." *Id.* at 978.

The strict standard appears to be the majority view. *See T.J. Stevenson & Co. Inc. v. 81,193 Bags of Flour*, 629 F. (2d) 338, 360 (5th Cir. 1980) ("The *Eastern Air Lines* interpretation of § 2-607(3)(a) has been adopted by the vast majority of Courts which subsequently have considered the issue.").

Section 2-607(3)(a) is similar to Section 49 of the Uniform Sales Act.[4] Section 49 was derived from a number of California cases, as well as those of several other states, which modified the common law rule that acceptance of goods waives all remedies. *E.g., Reininger v. Eldon Mfg. Co.*, 114

---

[4] Section 49 of the Uniform Sales Act provided:

> In the absence of express or implied agreement of the parties, acceptance of the goods by the buyer shall not discharge the seller from liability in damages or other legal remedy for breach of any promise or warranty in the contract to sell or the sale. But, if, after acceptance of the goods, the buyer fails to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows, or ought to know of such breach, the seller shall not be liable therefor.

Unif. Sales Act § 49 (superseded by the U.C.C. in 1952).

Cal. App. (2d) 240, 250 P. (2d) 4 (1952). As Professor Willis-
ton, the author of the Uniform Sales Act, has noted, Section
49 continued the common law rule treating a tender of goods
by the seller as an offer of them in full satisfaction. 5 S.
Williston, *Williston on Contracts* § 714 (3d ed. 1961). The rule
was varied, however, to allow the buyer to accept the offer
without waiving any claims, provided the buyer gave the
seller prompt notice of any claimed breach. *Reininger*, 114
Cal. App. (2d) 240, 250 P. (2d) 4 (1952). This approach recon-
ciled the desire to give finality to transactions with the desire
to accommodate a buyer who, for practical business reasons,
had to accept the tendered goods despite unsatisfactory
performance by the seller. *Metro Invest. Corp. v. Portland
Rd. Lumber Yard, Inc.*, 263 Or. 76, 501 P. (2d) 312 (1972).

Most courts construed Section 49 to require the buyer to
give the seller express notice of the intent to seek legal
redress for specified damages. Hammond, *Notification of
Breach Under Uniform Commercial Code Section 2-
607(3)(a): A Conflict, a Resolution*, 70 Cornell L. Rev. 525
(1985). This construction frequently led to harsh results for
uninformed consumers. *E.g., Clarizo v. Spada Distrib. Co.*,
231 Or. 516, 373 P. (2d) 689 (1962). The drafters of the Code
made an effort to provide some relief by their official
Comment 4 to Section 2-607. Hammond, *supra*. Comment 4
makes it clear that the notice was not required "to be a claim
for damages or of any threatened litigation or other resort to
remedy." Instead, the comment states that "the notification
need merely be sufficient to let the seller know that the
transaction is still troublesome and must be watched." This
language seems to support the application of the lenient
standard. In its concluding sentence, however, Comment 4
states further that the notification must inform the seller "the
transaction is claimed to involve a breach." This language
seems to indicate the strict standard should be applied.

In any event, the fact that the drafters of the Code have
eliminated some of the technical rigors of notification does not
warrant the conclusion that just any expression of discontent
by a buyer satisfies the requirement of Section 2-607(3)(a).
*Eastern Airlines*, 532 F. (2d) 957. Section 2-607 did not
purport to displace Section 49 but rather was intended to
"continue the prior basic policies with respect to acceptance

of goods while making a number of minor though material changes in the interest of simplicity and commercial convenience." Milberger, *Section 2-607(3)(a): Effective Notification of Breach Under the Uniform Commercial Code,* 44 U. Pitt. L. Rev. 733, 735 (1983) (quoting the official comment to Section 2-607).

## III

Unsurprisingly, Hunt argues for application of the lenient standard, while Southeastern Steel argues the strict standard should be applied. Both cite ample authority from other jurisdictions supporting their respective positions. Both make compelling arguments for their respective positions. It is unnecessary, however, for us to decide which standard should be applied because a careful review of the facts reveals that Hunt did not give adequate notice of breach under either standard.

Quite obviously, Hunt did not give notice that it considered Southeastern to be legally in breach. Thus, Hunt cannot prevail under the strict standard. The question of whether Hunt gave adequate notice under the lenient standard is only slightly more difficult.

Cases applying the lenient standard typically rely on the part of Comment 4 which says the seller merely needs to inform the buyer "the transaction is still troublesome and must be watched." *E.g., Oregon Lumber,* 280 Or. 437, 571 P. (2d) 884. Indeed, no other aspect of Comment 4 supports this standard.

Mr. Hunt testified that he told Southeastern Steel about the problems his company had with the goods and that he dealt with Southeastern Steel about correcting the alleged defects, but there is no evidence Mr. Hunt, or anyone else, ever thereafter indicated to Southeastern Steel that the transaction remained troublesome. To the contrary, it is undisputed that, when Mr. Hunt was asked by the president of Southeastern Steel whether there were any remaining problems, his response was there were none. At the very least, Hunt was required to give Southeastern Steel notice that the transaction was "still troublesome and must be watched." Thus, Hunt cannot prevail, even under the lenient standard.

## IV

Hunt further argues it was not required to give notice of breach because Southeastern Steel "was on actual notice of each defect, because it either inspected or refabricated in its shop each defective material." In other words, Hunt argues there was no point in giving notice of breach because Southeastern Steel already knew it was in breach. More than sixty years ago, Learned Hand eloquently disposed of this imaginative, but fallacious, argument. Applying Section 49, he said:

> The plaintiff replies that the buyer is not required to give notice of what the seller already knows, but this confuses two quite different things. The notice "of the breach" required is not of the facts, which the seller presumably knows quite as well as, if not better than, the buyer, but of buyer's claim that they constitute a breach. The purpose of the notice is to advise the seller that he must meet a claim for damages, as to which, rightly or wrongly, the law requires that he shall have early warning.

*American Mfg. Co. v. United States Shipping Board E.F. Corp*, 7 F. (2d) 565, 566 (2d Cir. 1925). More recently, his exact words have been applied in a case arising under Section 2-607(3)(a). *Standard Alliance Industries v. Black Clawson Co.*, 587 F. (2d) 813, 825 (6th Cir. 1978).

For these reasons, the judgment of the Circuit Court is

Affirmed.

SHAW and GOOLSBY, JJ., concur.

