THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Hitachi Electronic Devices (USA), Inc.,       
Appellant,
 
 
 

v.

 
 
 
Platinum Technologies, Inc., Platinum Technology Financial Services, 
 Computer Associates International, Inc., NewCourt Financial USA, Inc. 
 and CIT Group, Inc., Defendants, Of Which Platinum Technologies, Inc., 
 Platinum Technology Financial Services, and Computer Associates International, 
 Inc., are,        Respondents.
 
 
 

Appeal From Greenville County
Charles B. Simmons, Jr., Master-In-Equity

Unpublished Opinion No. 2003-UP-766
Heard December 10, 2003  Filed December 
 31, 2003

AFFIRMED in part, reversed in part,
and remanded 

 
 
 
William S. Brown and Henry M. Burwell, both of Greenville, 
 for Appellant.
H. Donald Sellers and Boyd B. Nicholson, Jr., both 
 of Greenville, for Respondents.
 
 
 

 
 PER CURIAM: Hitachi Electronic Devices, Inc. appeals from 
 a master-in-equitys order finding for Platinum Technologies, Inc. (Platinum), 
 Platinum Technology Financial Services, and Computer Associates International, 
 Inc., in a contractual dispute over non-conforming goods.

FACTS
 
 Platinum sold software to Hitachi to facilitate the transfer of 
 data from differing systems to help Hitachi calculate sales commissions and 
 prepare compensation reports.  All parties understood Hitachi sought Platinums 
 services as part of a consolidation of its Greenville and Norcross offices 
 so both offices would be able to transfer dissimilar data to a new system.  
 All parties were also aware that Hitachi would lose access to certain data 
 in October 1998, making time of the essence in reaching an agreement and completing 
 the scheduled work.
 The parties signed a contract on July 31, 1998, for Platinum to 
 supply software and hardware to complete the project.  Hitachi agreed to pay 
 Platinum $195,723.75.
 The contract did not contain any dates for the installation of the 
 software or any deadlines with respect to full implementation.  The contract 
 did provide a limited warranty: 

 
 
 Platinum also warrants that the Software will perform 
 substantially as described in the accompanying Documentation during the Warranty 
 Period.  Customer acknowledges that (i) the Products may not satisfy all of 
 Customers requirements and (ii) the use of the Products may not be uninterrupted 
 or error-free.
 

 
 In case of a breach of 
 the warranty the contract stated:

 
 
 Platinum or its representative will correct or replace 
 any defective Software or, if not practicable, Platinum will accept the return 
 of the defective Software, terminate the applicable Product Schedule and refund 
 to Customer the License Fee actually paid to Platinum for the Software less 
 depreciation based on a 5 year straight line depreciation schedule.  Customer 
 acknowledges that this Paragraph sets forth Customers exclusive remedy, and 
 Platinums exclusive liability, for any breach of warranty or other duty related 
 to the quality of the Products.
 

 
 A Platinum representative was onsite at Hitachis Norcross office 
 in mid-August 1998 to install the product.  After installing it, the representative 
 tested the product to ensure it was capable of performing as planned.  The 
 test failed.  The representative indicated the reason for the failure was 
 the softwares inability to transfer data through a proprietary data storage 
 system known as Harbinger. The product worked in all other aspects at the 
 time of the installation. 
 Platinum was aware that Hitachi used and planned to continue its 
 use of the Harbinger system before entering into the contract.  Platinum never 
 informed Hitachi that the Harbinger system would cause any difficulty with 
 the operating software.  To use the data on the Harbinger system the data 
 had to be placed in an appropriate format, a task not contemplated in the 
 contract.  Platinum did not perform this task, and Hitachi did not ask it 
 to do so.
 Shortly after the installation of the software, the server crashed.  
 Other problems with the software occurred, leading Hitachi to contact the 
 Platinum help desk for a solution. 
 Platinum made follow-up calls in November and December 1998 to assure 
 the problems had been corrected.  No one at Hitachi returned Platinums calls 
 or made further contact with its help desk.
 Because the system proved unable to transfer the desired data, Hitachi 
 contracted with another consultant in December 1998 to provide temporary solutions 
 to their data transfer problems.  Approximately a year later on November 10, 
 1999, Hitachi returned the software to Platinum stating that it was rejecting 
 the software as non-conforming. Hitachi also demanded repayment for the money 
 it had paid.
 Platinum refused Hitachis demand.
 In March 2000, Hitachi filed suit against Platinum alleging fraud, 
 negligent misrepresentation, and breach of contract.  Hitachi also 
 sought a declaratory judgment that it could enforce its claims against the 
 named defendants.
 The parties agreed the U.C.C. applied to the transaction at issue.  
 The master-in-equity found for Platinum and all the other defendants. 

 
 STANDARD OF REVIEW

In an action at law, on appeal of a case tried 
 without a jury, this court cannot disturb the trial judges findings of fact 
 unless those findings are wholly unsupported by the evidence or controlled 
 by an erroneous conception or application of the law. 
 [1] 
LAW/ANALYSIS

 I. 
Improper
Application of Code
 
 Hitachi asserts the master improperly applied the standard 
 for rejection under S.C. Code Ann. § 36-2-602 (2003) , 
 instead of the proper standard for revocation of acceptance under S.C. 
 Code Ann. § 36-2-608 (2003) .  Hitachi, 
 however, failed to properly preserve the issue.
 
 In order to preserve an issue for 
 appellate review, the issue must have been raised to and ruled upon by the 
 trial court. [2]   Hitachi raises this issue for 
 the first time on appeal; therefore, we decline to address it.
 II. 
 Notice of Rejection 
 Under the U.C.C., a buyer may reject the goods or revoke 
 his acceptance when goods fail to conform to the contract in any respect. [3]   Such a rejection or revocation, to be effective, 
 must be within a reasonable time after delivery. 
 [4]   
 The master found the return of the goods was not effected 
 until fifteen months after the installation of the software and more 
 than ten months after a separate consultant began implementing new software 
 to replace the Platinum software.  Therefore the master determined that 
 Hitachis rejection and return was untimely. [5]   
 Hitachi contends, however, that it could not know of 
 the true non-conforming status of the software until March 1, 1999, 
 the date by which Platinum had assured the system would be fully operational.  
 More precisely, Hitachi argues it should not be penalized for trying 
 to work with Platinum to make the software conforming until, at the 
 earliest March 1, when it became apparent the software could not be 
 corrected.
 Under the facts of the case, we cannot say the masters 
 decision is wholly unsupported by the evidence or controlled by an 
 erroneous conception or application of the law. 
 [6]   Even accepting March 1, 1999, as the date when Hitachi realized 
 the product was nonconforming, there is still the matter of an eight-month 
 gap between the times it knew the product was defective and the time 
 it rejected the software on November 10, 1999.  
 III. 
 Notice of Breach 
Hitachi argues the master incorrectly determined Hitachi 
 was required to notify Platinum of its breach in writing because its complaints 
 to Platinum regarding problems and incompatibility issues with the software 
 are sufficient to satisfy the notice requirements under the U.C.C.  We disagree.
In Southeastern Steel v. W.A. Hunt Construction, 
 this court found compelling a circuit courts determination that notice of breach 
 under S.C. Code § 36-2-607(3)(a)  (2003) must 
 be in writing, as is rejection of goods under S.C. Code § 36-2-602 (2003), [7]  although we did not decide the case on this 
 issue. [8]   Hitachi therefore was required to give Platinum 
 written notice of its breach. 
 
 The calls made by Hitachi to Platinums help desk in 
 September 1998 and November 1998 do not constitute written notice of breach.  
 
 The nature of the problems were not such as to put Platinum 
 on notice of a breach or even that Hitachi was materially dissatisfied with 
 the product.  The help desk calls were, as the master classified them, typical 
 requests for help that are made during any software installation process.

The record bears this out.  A Platinum 
 employee who installed the software testified that the issues reported to the 
 help desk by Hitachi were typical software problems. 
 
 Moreover, after Platinums help desk provided assistance 
 in September and November 1998, no one at Hitachi returned any of the several 
 phone calls the help desk made to ensure the software had been installed properly. 
 

 
 Nothing in the evidence dissuades us from accepting 
 the masters view that Hitachi provided no written notice of breach until 
 it sent its letter claiming to effect revocation on November 10, 1999.  Hitachi 
 therefore failed to properly notify Platinum of its breach. 

IV. 
Contractual and Common Law Remedies 

Hitachi
argues the master improperly construed S.C. Code Ann. '
36-2-607(3)(a) (2003) to bar it from pursuing an expressly agreed upon remedy in
the contract and its common law remedies.   
 Section 36-2-607(3)(a), which applies when a 
 tender has been accepted, provides in part that the buyer must within a reasonable 
 time after he discovers or should have discovered any breach notify the seller 
 of breach or be barred from any remedy . . . .  The master viewed the term 
 any remedy as embracing any and all claims one may have against another, 
 and not just those claims brought pursuant to the Uniform Commercial Code, 
 and held a claimant who fails to provide the notice required by section 36-2-607(3)(a) 
 cannot therefore bring a breach of contract or breach of warranty claim.
 We disagree with the master's holding in this 
 regard.  The Official Comments that accompany this section indicate the notification 
 requirement is limited to those rights that arise under the Uniform Commercial 
 Code: 

 The notification which saves the
 buyer's rights under this 
 Article need only be such as informs the seller that the transaction is 
 claimed to involve a breach . . . . 
 [9] 

 Section 36-2-607(3)(a) falls within Article 2, 
 entitled Sales. [10] 
 Further, the South Carolina Reporter Comments 
 note that subsection (3)(a) tracks the common law rule: 

 Subsection (3)(a) states the common law rule that the buyer 
 must communicate his rejection to the seller within a reasonable time after 
 he discovers or should have discovered the defect.  Failing this, the buyer 
 will have waived the remedies for breach recognized as available to him by 
 subsection (2). [11] 

 This comment suggests to us that the drafters 
 of the Uniform Commercial Code only meant to make the notification requirement 
 contained in section 36-2-607(3)(a) mirror the common law rule that a buyer 
 must communicate to the seller a rejection within a reasonable time after 
 the defect is discovered or ought to have been discovered.
 More importantly, section 36-2-719(1)(a) allows 
 parties to a contract to provide for remedies in addition to or in substitution 
 for those provided in this chapter . . . . 
 [12]   The Official Comment to section 36-2-719(1) notes that [u]nder 
 this section parties are left free to shape their remedies to their particular 
 requirements and reasonable agreements limiting or modifying remedies are 
 to be given effect. [13]   
 Here, the parties expressly provided for another 
 remedy in their contract.  In paragraph 5(b) of the contract, which is entitled 
 ARemedies,@ the parties agreed that Platinum . . . will correct or 
 replace any defective software, or if not practicable, . . . will accept the 
 return of the defective software and [c]ustomer acknowledges that this Paragraph 
 sets forth Customer's exclusive remedy. [14]   Section 36-2-607(3)(a) does 
 bar Hitachi from enforcing this contract provision.
 Finally, a buyer under the Uniform Commercial 
 Code is not required to elect between a revocation of acceptance under section 
 36-2-608, [15] where the buyer has accepted on the reasonable assumption 
 that the non-conformity would be seasonably cured, [16] and a recovery for breach.  The buyer may 
 pursue both remedies. [17] 
 The master, therefore, incorrectly determined 
 that a buyer cannot bring a common law breach of contract or breach of warranty 
 action if it does not provide the required notice under § 36-2-607(3)(a). 
 Accordingly, we reverse and remand for the master to address the issue of 
 breach of contract.
 
 AFFIRMED in part, reversed in part, and remanded.
 GOOLSBY and ANDERSON, JJ., and CURETON, A.J., concur.
 
 

 
 [1] Maddux Supply Co. v. Safhi, Inc., 
 316 S.C. 404, 406, 450 S.E.2d 101, 102 (Ct. App. 1994) .
 
 
 [2] Holy Loch Distribs., Inc. v. Hitchcock, 
 340 S.C. 20, 24, 531 S.E.2d 282, 284 (2000) .
 
 
 [3] S.C. Code Ann. §§ 36-2-601(a) 
 , -608 (2003).
 
 
 [4] S.C. Code Ann. §§ 36-2-602(1) 
 , -608(b)(2) (2003).
 
 
 [5] See Southeastern Steel Co. v. W.A. 
 Hunt Constr. Co., Inc., 301 S.C. 140, 390 S.E.2d 475 (Ct. App. 1990) 
 ; S. Tank & Culvert Co., Inc. v. Edisto 
 Asphalt Co., Inc., 285 S.C. 579, 330 S.E.2d 545 (Ct. App. 1985) 
 .
 
 
 [6] Maddux Supply 
 Co., 316 S.C. at 406, 450 S.E.2d at 102 .
 
 
 [7] Our supreme court 
 has determined that, although S.C. Code § 36-2-602 (2003) does not explicitly 
 require written notice, a buyer must notify a seller in writing for a rejection 
 of goods to be effective.  Southeastern Steel Co., Inc. v. Burton Block 
 & Concrete Co., Inc., 273 S.C. 634, 637, 258 S.E.2d 888, 889 (1979) 
 ; see also Plantation Shutter Co., Inc. v. 
 Ezell, 328 S.C. 475, 480, 492 S.E.2d 404, 407 (Ct. App. 1997) .
 
 
 [8] 301 S.C. 140, 143, 
 390 S.E.2d 475, 477 (Ct. App. 1990) . 
 
 
 [9] S.C. Code Ann. § 36-2-607 (2003), Official Comment 
 4 (emphasis added).
 
 
 [11] S.C. Code Ann. § 36-2-607(3)(a) (2003), S.C. 
 Reporters Comments to subsection (3)(a).
 
 
 67A Am. Jur. 2d Sales § 836 (2003).
 
 
 [14] S.C. Code Ann. 
 § 36-2-719(1)(b) (2003) states that resort to a remedy as provided [in 
 subsection (a)] is optional unless the remedy is expressly agreed to be 
 exclusive, in which case it is the sole remedy.  We do not address the 
 question of whether the remedy provided for in paragraph 5(b) is an exclusive 
 one because neither party raised it nor did the master rule on it.
 
 
 William D. Hawkland, Hawkland Uniform 
 Commercial Code Series § 2-608:1 (Callaghan 2002); see also S.C. 
 Code Ann. § 36-2-608(3) (2003).
 S.C. Code Ann. § 36-2-608 (2003), Official 
 Comment 1; William D. Hawkland, Hawkland Uniform Commercial Code Series 
 § 2-608:1 (Callaghan 2002); see also Adams v. Grant, 292 S.C 
 581, 585-86, 358 S.E.2d 142, 144 (Ct. App. 1986).